IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW R. LOPEZ,<br><br>    Plaintiff,<br><br> vs.<br><br>D. PETERSON, et al.,<br><br>    Defendants. | Case No. CIV S-98-2111 (JKS)<br><br><br>O R D E R |

**INTRODUCTION**

  This case has languished on the Court's docket for some time. To get it moving, there are a number of motions pending. Chief among these motions is the State's motion to dismiss this case. See Docket Nos. 210 (Mot.); 217 (Opp'n); 219 (Reply). Plaintiff Andrew Lopez also moves to supplement his opposition, Docket No. 221; a motion the State opposes, Docket No. 224. Lopez moves again for an appointment of counsel and for a writ of habeas corpus ad testificandum for what are essentially discovery requests. Docket Nos. 223 (Mot. for counsel); 222 (Hab. corp.). These motions are addressed below.

**DISCUSSION**

  The State's motion to dismiss makes what are essentially two arguments. First, the State argues that Lopez has failed to exhaust his claims of deliberate indifference to his medical needs.

1

Second, the State argues that even if Lopez's claims are exhausted, they fail to meet the threshold standards of deliberate indifference as established by United States Supreme Court and Ninth Circuit Court of Appeals precedent.

As the Court's numerous orders in this case have outlined, Lopez raises two claims. The first is that prison officials failed to provide him adequate footwear. The second is that prison officials failed to provide him surgery for his deviated septum. The State argues that both of these claims are unexhausted and provides various documents to prove its point. However, addressing the merits of the exhaustion argument is unnecessary if Lopez's claims of alleged harm fail to meet the minimum requirements of deliberate indifference jurisprudence. Toward this end, the State moves for a judgment on the pleadings, arguing that Lopez's allegations fail to describe sufficient harm, or in the alternative, link specific harms to the various Defendants.

**I.   Whether Lopez's allegations meet deliberate indifference requirements**

To make a claim, Lopez must show that Defendants exhibited "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 105 (1976). Such a showing is sufficient to demonstrate the "unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Id. at 104 (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)) (internal quotation marks and citation omitted). The Constitution "does not necessitate comfortable prisons," Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)), nor is the Eighth Amendment a mandate for "broad prison reform" or excessive

federal judicial involvement, Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). However, the Eighth Amendment does not permit inhumane conditions, and prison conditions are subject to scrutiny under its provisions. Farmer, 511 U.S. at 832.

The United States Supreme Court has outlined a two-part test to determine if prison officials have violated a prisoner's rights under the Eighth Amendment:

> [A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious[;] a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. . . . The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind.

Farmer, 511 U.S. at 834 (citations and internal quotations omitted); see also Wilson v. Seiter, 501 U.S. 294, 299-300 (1991) (discussing subjective requirement); Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (discussing two-part test); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996) (same); Wallis v. Baldwin, 70 F.3d 1074, 1076-77 (9th Cir. 1995) (same); Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994) (same).

With regard to the first requirement, "[t]he circumstances, nature, and duration of a deprivation of [shelter, food, clothing, sanitation, medical care, and personal safety] must be considered . . . ." Johnson, 217 F.3d at 731. "The more basic the need, the shorter the time it can be withheld." Hoptowit, 682 F.2d at 1259. Deprivation of basic necessities for even brief periods can constitute a violation whereas more moderate deprivations must be more lengthy or ongoing. Johnson, 217 F.3d at 731-32.

ORDER
C:\Documents and Settings\MKrueger\Local Settings\Temp\notes4BF954\S-98-2131.013.wpd

As to the second requirement, the relevant state of mind is "one of 'deliberate indifference' to inmate health or safety . . . ." Farmer, 511 U.S. at 834. To show deliberate indifference, the inmate must prove that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "Thus, Farmer[] requires an inmate to show that the official knew of the risk and that the official inferred that substantial harm might result from the risk." Wallis, 70 F.3d at 1077. The "prison official need not have acted 'believing that harm actually would befall an inmate; it is enough that the official acted . . . despite his knowledge of a substantial risk of serious harm.'" Id. (quoting Farmer, 511 U.S. at 842) (omission in original). The question of the official's knowledge is a question of fact. Farmer, 511 U.S. at 826.

The State argues first that Lopez's complaints regarding his footwear are not objectively serious under prevailing deliberate indifference standards. It argues that the two periods of which Lopez complains, which the State summarizes as periods of nine months and a subsequent period of forty-five days, is not sufficient to describe a § 1983 violation when prison officials only gave Lopez shoes that were two sizes too narrow—size E rather than EEE width shoes. Docket No. 210 at 10–11. However, the only case that the State points to that specifically references the adequacy of footwear in the context of a prisoner § 1983 suit is an unpublished decision from Judge Patel in the Northern District of California, id. at 11, and, that case is not even on point. In

that case, prisoners filed a class action, arguing that the slip-on shoes mandated by Pelican Bay created cruel and unusual conditions because the slip-ons provided insufficient support and did not allow inmates to exercise "vigorously." Munoz v. Marshall, 1994 WL 508633, *1 (N.D. Cal. 1994). While Judge Patel ultimately held that such claims were not sufficiently serious, she specifically noted that "[i]nmates who claim that the state-issued footwear helps to exacerbate pre-existing orthopedic injuries may request to see a physician who, if he or she deems it medically indicated, may prescribe therapy or alternative footwear as needed." Id. at *2.

The situation Judge Patel describes is precisely the situation Lopez outlines in his amended complaint, at least as to the first period of deprivation. The amended complaint alleges that Lopez had received a doctor-ordered prescription for "special shoes." Docket No. 10 at 3(f). It goes on to allege that Defendant Minnick deliberately and intentionally refused to provide or order the shoes, even after repeated requests. Id. The State admits that the minimal result of this conflict was Lopez being without medically prescribed shoes for a period of nine months. The amended complaint alleges Lopez suffered permanent scarring and extreme pain because the shoes were not provided. "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104) overruled on other grounds by WMX Tech., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997). Lopez's allegations meet this standard.

However, the Court agrees with the State with regard to its second argument that even if sufficient harm is alleged, the amended complaint does not state a claim against most of the named Defendants. With regard to the first period, the amended complaint only states a claim against Defendant Minnick. According to the complaint, Minnick was responsible for ordering such shoes, Lopez showed Minnick his prescription, Lopez complained about the serious pain he was suffering without his shoes, and Minnick refused to order the shoes without justification. Docket No. 10 at 3(f). As to the rest of the Defendants allegedly involved in the nine-month deprivation, the amended complaint is facially deficient in alleging personal involvement in denying Lopez the shoes.[1] The Court will allow Lopez's claims concerning the nine-month deprivation to proceed against Minnick only.

As to the second alleged deprivation of forty-five days, Lopez has not stated a claim against any Defendants. He alleges only that he told several guards that he needed his shoes returned to him after his return from an unrelated court appearance and that the named Defendants did not provide his shoes in a "timely manner." Id. at 3(n). No where does Lopez state why these Defendants were responsible for returning his shoes or what a "timely manner" means. Not every prison official to whom a prisoner complains becomes liable when apprised, by the prisoner or

---

[1] Lopez alleges the other related Defendants were liable due to their involvement in denying his administrative appeal related to the shoes. He does not allege that they were personally involved in depriving him of the shoes. Because the allegations establish the lack of a constitutional violation, the dismissal will be with prejudice. See Lopez v. Smith, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc).

another individual, of a prisoner's complaints.  At most the allegations describe negligence rather than deliberate indifference, which is insufficient under prevailing Supreme Court precedent.  See Estelle, 429 U.S. at 106.

The only other named Defendant related to the forty-five day period is Defendant Selky.  Lopez's allegations relate to Selky's apparent position of authority in that he alleges Selky deprived Lopez of his shoes for forty-five days as the commanding officer in charge of providing property to Lopez's section of the prison. Docket No. 10 at 3(n).  Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  "Liability under [§] 1983 arises only upon a showing of personal participation by the defendant."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Lopez's complaint fails to allege that Selky personally, as opposed to as a supervisor, deprived him of his shoes.  Moreover, any deprivation alleged by Lopez, at least as the deprivation concerns Selky, is related to Selky's alleged discrimination against Lopez as a member of the "Hispanic C.D.C. based class group."  Docket No. 10 at 3(n).  Lopez does not allege that Selky knew of his "extreme" pain and suffering and then personally failed to act in the face of that knowledge when Selky had a duty to do so.  Indeed, Lopez does not allege how or why Selky was even aware

of Lopez's doctor's prescription for the shoes, that Selky even knew the "package" he was allegedly withholding contained Lopez's medical footwear, or that Selky knew Lopez was suffering.  Instead, Lopez vaguely alleges in conclusory terms that Selky acted intentionally and deliberately in denying Lopez his footwear through Selky's position as a commanding officer.  The amended complaint makes clear that any personal participation in withholding packages in general was due to Selky's alleged discrimination toward Lopez's prison classification rather than Lopez's suffering due to his not receiving his medically prescribed shoes.[2]  Because Lopez's factual allegations with regard to the alleged forty-five day deprivation of his shoes give no indication that they could be fairly cured by amendment, the dismissal will be with prejudice as to the defendants allegedly involved.[3]  See Lopez, 203 F.3d at 1126-27.

---

[2] The Court has previously ruled that the complaint only makes out claims of deliberate indifference to Lopez's medical needs.  While clearly discrimination based on race could describe a constitutional violation under § 1983, as outlined above, claims of deliberate indifference to medical needs must describe a serious deprivation and action, or inaction, in the face of that deprivation that amounts to something more than negligence.  Acting out of alleged racial animus, in a generalized way, does not allege specific indifference to a known medical need, of which the failure to treat creates serious pain and suffering.  Thus, without a surviving claim of racial discrimination, Lopez's allegations fail to outline a violation by Selky that would be grounded in the Eighth Amendment's prohibition against cruel and unusual punishment.

[3] Even were the Court to allow the alleged forty-five day shoe deprivation claim to continue, it is clear that the claim was unexhausted at the time Lopez filed suit since the conduct at issue occurred after the filing date of this suit.  Lopez filed this suit on October 1, 1998.  See Docket No. 1.  The alleged forty-five day deprivation began in December 1998.  Docket No. 10 at 3(n).

ORDER
C:\Documents and Settings\MKrueger\Local Settings\Temp\notes4BF954\S-98-2181.013.wpd

With regard to Lopez's deviated septum allegations, the State argues that this case presents the classic "difference in opinion" paradigm common in § 1983 cases.  In short, a prisoner's disagreement with a doctor's course of treatment, without more, is insufficient as a matter of law to preclude summary judgment. Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970) ("[A] difference of opinion between a prisoner patient and prison medical authorities as to what treatment is proper and necessary does not give rise to a claim under [§ 1983]."); Stiltner v. Rhay, 371 F.2d 420, 421 n.3 (9th Cir. 1967).  Even a difference in medical opinions is insufficient to describe a violation.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  The State's argument is that Lopez's complaint establishes a difference in medical opinions, i.e., the opinions of the two doctors who recommended surgery for Lopez's deviated septum versus the opinions of the Medical Authorization Review and Health Care Review committees, which denied the surgery.  Docket No. 210 at 12-13.

The Court disagrees.  To substantiate the State's argument, the amended complaint would have to outline the reasons why the committees denied the surgery.  It does not.  It simply states that Lopez received a surgery recommendation from one doctor.  Docket No. 10 at 3(g).  In accordance with prison policy, Lopez then went to Reno, Nevada for a second opinion.  The second doctor also recommended surgery.  The complaint then states that the two committees denied the surgery "intentionally and deliberately" and continued Lopez's "suffering,"; suffering that included "severe headaches, vision problems, loss of balance, loss of sleep, and other difficulties."  Id. at 3(g)-3(h).  While it is conceivable

that the committees' denials could have been based on reasoned medical opinions—in which case the State's argument would be well taken—the amended complaint does not allege such facts.  If the denials were based on other factors such as cost, inconvenience, time, personnel, or something unrelated to medical advice, then the State's argument would clearly be unpersuasive.  Indeed, Exhibit D to Lopez's opposition indicates that Defendant Hooper informed Dr. Cappola, the doctor to whom Lopez was referred for a second opinion, that the reason that the surgery was denied was because "CDC requires that there be bilateral blockage of the nose before it is authorized."  Docket No. 217, Ex. D.  There is nothing in the record to indicate why this policy is reasonable or that it is based on reasoned medical opinion.  The Court will let this claim stand against Defendants Hooper, Jennings, and Castro.

## II.  Whether Lopez's claims are exhausted

To be clear, the Court is allowing this action to proceed against the following Defendants:  Minnick, Hooper, Jennings, and Castro and no others.  With this clarification, it is easier to address whether Lopez has exhausted his claims as to these Defendants.  A motion to dismiss for failure to exhaust falls under the unenumerated ambit of Federal Rule of Civil Procedure 12(b). Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Exhaustion is an affirmative defense that must be raised and proved by the defendants to a § 1983 suit.  Id.  The basic requirement under the Prisoner Litigation Reform Act ("PLRA") is that all non-judicial remedies, i.e., administrative remedies, must be exhausted before a prisoner may file suit in federal court.  42 U.S.C. § 1997e(a).  In

making the exhaustion determination, courts "may look beyond the pleadings and decide disputed issues of fact." Wyatt, 315 F.3d at 1119-20. The proper remedy for failure to exhaust is dismissal of the unexhausted claims without prejudice to their renewal once they have been exhausted. Id. at 1120.

With regard to Defendant Minnick, the State essentially admits that Lopez's claims against Minnick were exhausted. It states that Lopez failed to exhaust remedies regarding the nine-month deprivation of his shoes, except for an inmate appeal against Minnick as the laundry supervisor that "arguably"exhausted Lopez's claim against Minnick. This claim will therefore stand against Minnick.

With regard to the other Defendants and their role in Lopez's claims of deliberate indifference related to Lopez's deviated septum, the State argues that "none of [Lopez's] inmate appeals exhausted before [Lopez] filed this action concern[ing] this issue." Docket No. 210 at 7. The State points to Inmate Appeals Nos. 97-01975, 97-02028, and 97-02912, all of which were appeals by Lopez and none of which mention the deviated septum issue. See Docket No. 211, Ex. A at MTD-006-009, 014-017, 018-021, 028-031. Indeed, the only inmate appeals that even mention Lopez's deviated septum are appeals that Lopez includes with his opposition. See Docket No. 217, Ex. C. But as the State points out, each of these appeals was rejected for failing to meet various procedural requirements in filing inmate appeals.[4] To support its argument

---

[4] There appear to be two rejection letters from prison officials. The first rejects the appeal for having "too many issues." The form goes on to explain that only one issue is allowed per inmate appeal—Lopez had included several on his prison appeal form—and that Lopez needed to receive informal responses

ORDER
C:\Documents and Settings\MKrueger\Local
Settings\Temp\notes4BF954\S-98-2111111.013.wpd

that such appeals fail to meet the exhaustion requirement, the State points to two unpublished cases, Barkley v. Brown, 2002 WL 1677709 (N.D. Cal. July 22, 2002) and Burns v. California Department of Corrections, et al., 2001 WL 1658283 (N.D. Cal. Dec. 14, 2001), which hold respectively that a prisoner fails to exhaust if he refuses to comply with prison appellate procedures and if he bypasses the second-level review after receiving an appellate screening form. See Docket No. 219 at 5.

Lopez argues that the rejections are evidence of prison staff "interfering" with his efforts to exhaust his claims with the result being that exhaustion is not required. Docket No. 217 at 3. While, as Lopez notes, there is support for this contention, see Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001), Lopez fails to outline why he was unable to comply with what appear to be simple procedural requirements. His original appeal was rejected because he included numerous claims on his inmate appellate screening form when, instead, prison regulations apparently required him to submit each issue individually on separate forms. Lopez does not explain why this requirement is unreasonably onerous nor why he was unwilling to comply. Nor does the Court see why the requirement is unreasonable. Instead of complying, Lopez attempted to jump review levels and go directly to a third-level review. Again, he fails to explain why he was unable or unwilling to go through normal channels. In the least, the listed reasons for not accepting the appeal do not make out a case of deliberate interference with Lopez's appeal by prison officials.

---

before submitting his appeal to the appeals office. The second letter rejects the appeal because it was submitted directly for a third-level review rather than after the second-level review process had been completed.

Lopez is clearly aware of the procedures to file prison appeals. His own appeal exhausting his claims against Defendant Minnick show he is capable of compliance. Further, it is equally clear that he has extensive experience in filing appeals as he has filed more than fifty prison complaints between 1993 and 2003, at least seven of which were filed before this action commenced in federal court. See Docket No. 212, Ex. A. The Court will grant the State's motion to dismiss Lopez's claims related to his deviated septum for failure to exhaust.5

Finally, several issues need to be addressed. First, the State argues that because Lopez did not exhaust his remedies against all of the defendants he named in his amended complaint, the action cannot continue as to any of the defendants, whether the claims have been exhausted or not. Docket No. 210 at 7-8. It cites Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000), as well as a number of unpublished decisions to support its contention that because some of the claims are unexhausted, the entire suit must be dismissed. Despite the State's apparent allegations to the contrary, suffice it to say that this so-called "total exhaustion" rule is a disputed proposition of law that has not been definitively ruled on by the Ninth Circuit. Compare Blackmon v. Crawford, 305 F. Supp. 2d 1174, 1178-81 (D. Nev. 2004) (holding that proper remedy is to allow prisoner to amend complaint to

---

[5] A further concern noted by the Ninth Circuit is not present in the instant case. When looking beyond the pleadings and deciding the exhaustion issue, courts must insure that the prisoner has adequate notice of his opportunity to develop a record. See Wyatt, 315 F.3d at 1120 n.14. In this case, the State's motion put Lopez on notice; a conclusion buttressed by Lopez's inclusion of numerous prior prison appeals with his brief in opposition to the State's motion, all of which fail to demonstrate exhaustion.

allege only exhausted claims) and Cooper v. Garcia, 55 F. Supp. 2d 1090, 1094-95 (S.D. Cal. 1999) (concluding that proper procedure under PLRA is to dismiss without prejudice unexhausted claims and address merits of exhausted claims) with Mubarak v. Cal. Dep't of Corr., 315 F. Supp. 2d 1057, 1060-61 (S.D. Cal. 2004) (noting that district courts in the Ninth Circuit are split on this issue, listing cases, and holding that total exhaustion rule is better reading of PLRA's requirements).  The primary policy ground upon which the disagreeing courts seem to differ is which procedure will better promote judicial efficiency.  In this case, it is clear that efficiency has not been in great supply.  The Court will therefore not apply the total exhaustion rule.  As explained above, Lopez has stated a claim against Defendant Minnick.  The Court will therefore grant the State's motion to dismiss in part and deny the motion in part as applied to Minnick.

Second, the Court has significantly narrowed the issues in this case to one claim against one defendant.  This claim is not overly complex, and Lopez has repeatedly demonstrated his ability to oppose the State and address the Court.  Accordingly, his motion for counsel will be denied.  Third, Lopez's motion for a writ of habeas corpus ad testificandum is an attempt to subpoena the prison warden to bring various documents to what the Court assumes will be deposition testimony.  The request will be denied.

**IT IS THEREFORE ORDERED:**

The State's motion to dismiss at **Docket No. 210** is **GRANTED IN PART** and **DENIED IN PART.**  All Defendants other than Defendants Minnick, Hooper, Jennings, and Castro are **DISMISSED WITH PREJUDICE.**  Defendants Hooper, Jennings, and Castro are **DISMISSED WITHOUT PREJUDICE.**  Plaintiff's claim of deliberate indifference

related to his alleged forty-five day deprivation of his medically prescribed shoes is **DISMISSED WITH PREJUDICE**. Plaintiff's claim of deliberate indifference related to his deviated septum is **DISMISSED WITHOUT PREJUDICE**. To be clear, only Plaintiff's claim of deliberate indifference related to the alleged nine-month deprivation of his medically prescribed shoes as alleged against Defendant Minnick remains. Plaintiff's motion to supplement his opposition at **Docket No. 221** is **GRANTED**. Plaintiff's motion for counsel at **Docket No. 223** is **DENIED**. Plaintiff's motion for a writ of habeas corpus ad testificandum at **Docket No. 222** is **DENIED**.

And finally, the time for filing dispositive motions in this case has run. Accordingly, the parties are directed to certify, through individually filed briefs, that this case is ready to proceed to trial. Should either party wish to file additional dispositive motions, they should notify the Court in writing and ask for leave to file briefing supporting the motion. Any such requests are due **on or before Friday, July 8, 2005**. In the event the parties do not anticipate additional dispositive motions, they should notify the Court that they are ready to proceed to trial, as well as outline dates during the next six months that would be amenable to trial, in briefing to be filed by the respective parties **on or before Friday, July 8, 2005**. Once both parties have certified that the case is ready to proceed to trial and provided appropriate dates, the Court will send out a trial setting order.

Dated at Anchorage, Alaska, this 24th day of June 2005.

/s/ James K. Singleton, Jr.
**JAMES K. SINGLETON, JR.**

ORDER
C:\Documents and Settings\MKrueger\Local Settings\Temp\notes4BF954\S-98-211151.013.wpd

```
                                          United States District Judge
```

ORDER
C:\Documents and Settings\MKrueger\Local Settings\Temp\notes4BF954\S-98-211161.013.wpd