UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ANDREW R. LOPEZ,

Plaintiff,

vs.

D. PETERSON, *et al.*

Defendants.

Case No. 2:98-cv-02111-JKS (PC)

ORDER
[Re: Motions at Dockets 234 and 251]

## I. MOTIONS PRESENTED

At docket 234 plaintiff Andrew R. Lopez ("Lopez") has moved for summary judgment in his favor. At docket 239 defendant S. Minnick ("Minnick") filed her opposition to plaintiff's motion. At docket 241 Lopez filed his reply to defendant's opposition. At docket 251 Minnick has moved for summary judgment in her favor. At docket 253 Lopez has filed his opposition thereto and again requests the appointment of counsel. Minnick has not replied to the opposition. The court, having reviewed the moving papers and oppositions, has determined that oral argument would not be of assistance in deciding the motions.

## II. BACKGROUND/FACTS

Lopez, having been convicted of a crime in the California State courts, is incarcerated by the California Department of Corrections ("CDC"). At the time of the incidents alleged in his complaint, Lopez was held at the High Desert State Prison. In his complaint Lopez alleged three claims against several defendants based upon: (1) a nine-month period in which he alleges he was denied adequate footwear; (2) a 45-day period in which he was denied adequate footwear; and (3) failure to provide surgery for a deviated septum. Upon motion of the defendants, the Court in an earlier order dismissed all of the claims except the claim against Minnick.[1]

[1] Docket 227.

The amended complaint alleges defendant Minnick deliberately and intentionally refused, after repeated requests, to provide or order doctor-prescribed "special shoes." Lopez further alleges that he has suffered permanent scarring and extreme pain because proper size shoes were not provided. In its prior order, the Court held that the Lopez' allegations were sufficient to survive a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b) or (c).[2]

The records of the institution reveal the following facts.

In his initial internal appeal dated April 17, 1997, filed with the CDC, Lopez complained that:[3]

> In my medical file it is noted that my feet require special require special shoes. I arrived at HDSR on 1-14-97. It was re-confirmed by Dr. Beams on approximately 1-30-97. However, more than three months have passed and I have not received the medically authorized shoes. I have inquired about them several times. I suffer pain and discomfort and my feet are permanently scarred. The laundry supervisor's gross negligence serves no justification and is tantamount to being deliberately indifferent to my serious medical needs. This is aggravated by HDSP's policy regarding footwear. I am forced to wear ill fitting shoes which are, either, too big, or, too small.

The undated informal level response was:[4]

> REFUSED TO PROPERLY ADDRESS.
>
> Keep the stapled "Stick-em" as a permanent attachment.[5]

In his first formal level appeal dated April 25, 1997, Lopez responded:[6]

> The attached (stapled) "Stick-em" is not responsive. I have clearly stated in the base report that Dr. Beams, at HDSP, has reconfirmed my feet irregularities. Per Dr. Beams orders, the MTA called the clothing room and instructed that special shoes be ordered. The clothing room supervisor has failed to comply with medical necessities.

---

[2] *Id.*

[3] Docket 251-5, p. 6 [Declaration of S. Minnick in Support of Defendant's Motion for Summary Judgment ("Minnick Declaration"), Attachment A].

[4] *Id.*

[5] The Court notes that the "Stick-Em" referred to is not included as part of the document submitted to the Court.

[6] Docket 251-5, p. 6 [Minnick Declaration, Attachment A].

The reviewer's action, approved May 29, 1997:[7]

> Partially granted. As we discussed during our interview, our laundry at C-facility has 9E boots, which you have and state are too small. I contacted the laundry Supervisor and we will attempt to get a pair of 9EE boots. (Your actual size is 8½ EEE).

Lopez, expressed his continued dissatisfaction on June 1, 1997.[8]

> I am dissatisfied. Intentionally delaying to correct this situation is a deliberate indifference to my serious medical needs, and tantamount to a knowing willingness that further suffering will occur. I also want pictures taken of my feet to preserve the record.

Lopez's Second Level appeal was denied June 25, 1997, with the following response:[9]

> You have been seen for this problem and the problems addressed. Your request for $500 pain and suffering is denied. Shoe size is a clothing issue and not a medical issue. You will however, be issued a chrono for EEE shoes and be ducated for evaluation for our pilot boot program.

A medical chrono was issued June 25, 1997.[10]

Lopez's appeal to the director level was also denied on September 19, 1997, with the following findings:[11]

> I
>
> The appellant states that he is inappropriately being denied proper footwear. Appellant states his health care record will confirm that he requires special shoes, however, the institution is failing to provide him with the medically necessary shoes. Appellant states he requested photographs be taken of his feet to preserve the record, but Dr. Hooper denied the appeal and passed the buck to the laundry department stating it wasa clothing issue, not a medical issue. Appellant states his feet are permanent scarred, his toenails are rotting, he has acquired corns and calluses, he suffers from Metatarsalgia and Hammertoe, and is in constant pain. Appellant requests he be provided the necessary footwear, monetary compensation and that pictures be taken of his feet.

---

[7] *Id.*, p. 7

[8] *Id.*

[9] *Id.*, p. 8

[10] Docket 251-4, pp. 5, 6 [Declaration of J. Klarich, M.D. in Support of Defendant's Motion for Summary Judgment ("Klarich Declaration"), Attachment A].

[11] Docket 251-5, pp. 10–11 [Minnick Declaration].

II

> The institution takes the position that the appellant is not being denied proper footwear. The institution states that the shoe size is a clothing issue and not a medical issue. The institution states that the appellant will be issued a chrono for "EEE" shoes and be ducated for evaluation for the facility's pilot Boot Program.

III

[Recitation of Department Rules omitted]

> The documentation and arguments presented are persuasive that the appellant is not inappropriately being denied proper fitting footwear. The institution states the institution will issue the appellant a medical chrono for "EEE" width shoes and he will be evaluated for their pilot Boot Program. The institution is attempting to secure a pair of shoes the appellant claims are the right size. The Clothing Room Supervisor, S. Minnick, was contacted and stated the appellant accepted and signed for a pair of size 9-1/2 EE shoes on September 5, 1997, and that a pair of 8-1/2 EEE shoes will be sought for appellant.

J. Klarich, M.D., the Health Care Manager for California State Prison, Corcoran, states in his declaration with respect to the "medical necessity" for the proper size footwear:[12]

> 6. I found an entry dated June 25, 1997[,] by Dr. Hooper indicating that Mr. Lopez was seen for complaints relating to his feet. Mr. Lopez was seen by Dr. Hooper in regards to a CDC 602 Inmate Appeal concerning foot wear. Dr. Hooper examined Mr. Lopez and noted that he complained of permanently scarred feet. Dr. Hooper's note indicates "feet ➜ minor pressure points noted dorsum both feet." Dr. Hooper's assessment was "minimal pressure points – feet." Minimal pressure points is equivalent to when an individual comes home from a long day at work, takes off his shoes, and he has red markings on the feet from wearing the shoes all day.
>
> 7. In addition, Dr. Hooper issued a chrono indicating that Mr. Lopez was to be issued a pair of EEE state issued boots. There is no indication in the file that the issuance of the chrono was based on a medical necessity, but rather for comfort.
>
> 8. A review of Mr. Lopez' medical file shows that Mr. Lopez was not seen again after June 1997 for complaints of foot pain relating to the size of his feet until around September 2002. There is no medical evidence to support that Mr. Lopez has suffered permanent injury or scars, scrapes, blisters, deformities, or pain as a result of any delay in obtaining the correct size shoes. In fact, there is

[12] Docket 251-4, pp. 2–3 (Klarich Declaration).

no medical evidence to indicate that Mr. Lopez was suffering from any serious medical ailment or pain as a result of any delay in obtaining proper fitting shoes.

9. In sum, there is no medical evidence demonstrating that Mr. Lopez suffered a severe medical condition requiring the immediate issuance of EEE size shoes in 1997. Furthermore, there is no medical evidence demonstrating that Mr. Lopez suffered any serious or permanent injury as a result of any delay in obtaining the correct shoe size in 1997.

10. Presently, there is nothing wrong with Mr. Lopez' feet. Mr. Lopez has been seen by a podiatrist and the recommendation is simply that he wear extra wide shoes.

In her declaration, Minnick states with respect to obtaining off-size shoes:[13]

4. I do not specifically recall Plaintiff or the incidents he complains of in his complaint as this occurred approximately 8 years ago. Nonetheless, it an inmate needed a special order shoe, it was my custom and practice to to accommodate the inmate's needs when necessary.

5. Inmates were given shoes through their Facility Clothing Room. Plaintiff was housed in Facility C, therefore, he would go to the Facility C Clothing Room and request the shoes he needed from the staff. If Facility C did not have the size Plaintiff needed, then the Supervisor I would submit a request to me for the correct size shoes. In the event that the warehouse did not have the size in stock, then I would add a request for the specific size in the next order to the Prison Industry Authority (PIA). I generally placed orders to PIA every 90 days.

6. In situations where I was required to order special shoe sizes, I was required to order them from the PIA. The turn-around time for a shoe order depended largely on the availability of the shoes. Generally, it took the PIA anywhere from 3 to 6 months to fill an order.

With respect to her knowledge of the alleged "medical necessity," Minnick states.[14]

17. I am not a medical doctor and I was not aware at that time whether Plaintiff suffered from a serious medical condition which required that he be given the correct size shoes immediately. Based upon my review of the documentation, neither I nor my staff had any reason to believe that Plaintiff had a medical condition which required that he be given a pair of boots size 8 ½ EEE immediately.

---

[13] Docket 251-5, p. 2 [Minnick Declaration].

[14] *Id.*, p. 4.

In rebuttal, Lopez stated in his Declaration opposing Minnick's motion:[15]

> 11. Minnick refused to order my EEE shoes when Nurse Brennan and myself spoke to Minnick at the C Yard Laundry.
>
> 12. Doctor C. Hooper never examined my feet. I have reviewed my prison medical file thoroughly several times since January 1997 and have never seen a CDC 7254 authored by Dr. Hooper for June 1997.
>
> 16. Defendant Minnick refused verbally and in writing my requests to be provided shoes as prescribed by Dr. Beams. I spoke to Minnick while alone then with Nurse Brennan when Minnick was here at the C Yard laundry at High Desert, and Minnick was the one who signed the "Stick Em" that has been removed from CDC 602 No. C-97-02028. My Director's Level Attachment clearly states "the note from laundry was removed."[16]

In addition in his verified amended complaint, Lopez stated:[17]

> 42) In March 1997, H.D.S.P.'s, Dr. Beams examined plaintiff's feet and prescribed that plaintiff is to be given special shoes to accommodate plaintiff's extra wide feet.
>
> 43) H.D.S.P.'s C Yard laundry staff person, defendant Minnick, was responsible for ordering the shoes prescribed by Dr. Beams and providing them to plaintiff.
>
> 44) <u>Defendant Minick</u> refused to provide plaintiff's special shoes.
>
> 45) Plaintiff complained of the pain in his feet and showed the doctor and registered nurse Brennan ("R.N. Brennan") that his feet were suffering serious injury scrapes, blisters, and being squashed; and informed them that defendant Minnick refused to order the shoes as prescribed by the doctor.
>
> 46) At that time, R.N. Brennan walked with plaintiff to the laundry room to speak with defendant Minnick about providing plaintiff's shoes. Defendant Minnick refused.
>
> 47) R.N. Brennan and plaintiff returned to the facility infirmary, where R.N. Brennan informed the doctor of Minnick's refusal to provide plaintiff's special shoes.

---

[15] Docket 253, pp. 32–33 [Declaration of Andrew R. Lopez (Plaintiff) In Support of: Request for Counsel; and, In Opposition to Defendant's Motion for Summary Judgment and Its Attachment].

[16] In his Request for Director's Level Review, Lopez stated: "The informal level (laundry) refused to answer my complaint, and attached a note directing me to file on medical." Docket 251-5, p. 9 [Minnick Declaration, Attachment A].

[17] Docket 10, pp. 3(f)–3(g) [Amended Complaint Under the Civil Rights Act, 42 U.S.C. § 1983].

48) For nine (9) months, from January 1997 through September, [*sic*] 1997, plaintiff suffered extreme pain caused by defendant Minnick deliberate refusal to follow the doctor's prescription and provide the shoes; and, plaintiff also suffered permanent scars to his feet.

## III. ISSUES

The issue presented to the court on the cross-motions for summary judgment at bar is a relatively narrow one: Did Minnick act with deliberate indifference to the serious medical needs of plaintiff Lopez, *i.e*., interfere with a prescribed treatment? Determination of that issue rests on the determination of two underlying issues: (1) was the providing of size EEE work boots a matter of medical necessity; and (2) was the fact of the medical necessity communicated to defendant Minnick?

Although the parties in their respective motions have presented this case in the context of an interference with prescribed medical treatment, the case presents a mixed issue. At both the Second Level and Director Level appeals it was noted that shoe size was a clothing, not a medical, issue. As discussed further in Part V below, the Court agrees with that characterization. It is essentially a clothing issue necessitated by a medical situation engendered by the physical characteristics of Lopez, his extra wide feet. Minnick may be liable if it is established that she: (1) acted with deliberate indifference in failing to provide Lopez with adequate clothing, *i.e*., properly fitting shoes; and (2) that failure resulted in serious pain or medical problems.

## IV. STANDARD OF REVIEW

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact, and the moving party is entitled to judgment in its favor as a matter of law.[18] "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment."[19] In response to a properly supported motion for summary judgment, the opposing party must set

---

[18] FED. R. CIV. P. 56(c); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*); *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir. 1989).

[19] *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986).

forth specific facts showing that there is a genuine issue for trial.[20] A verified complaint serves as an affidavit for summary judgment purposes.[21] The issue of material fact required to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a fact-finder to resolve the parties' differing versions of the truth at trial. There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion.[22]

## V. DISCUSSION

The Supreme Court, holding that the infliction of unnecessary suffering on prisoners violated the Eighth Amendment, stated in *Estelle v. Gamble*:[23]

> [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

In *Estelle* the Supreme Court distinguished "deliberate indifference to serious medical needs of prisoners," from "negligen[ce] in diagnosing or treating a medical condition," holding that only the former violates the Constitution.[24] In short, Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety."[25]

In determining deliberate indifference, the court scrutinizes the particular facts and looks for substantial indifference in the individual case, indicating more than mere negligence or

---

[20] FED. R. CIV. P. 56(e); *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002).

[21] *Lopez v. Smith*, 203 F.3d at 1132 n. 14.

[22] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[23] 429 U.S. 97, 104–105 (1976) (footnotes, internal quotation marks, and citations omitted).

[24] *Id.*, at 106.

[25] *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

isolated occurrences of neglect.[26] The Ninth Circuit recently spoke to the subject of the appropriate test under *Estelle*.[27]

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. Yet, an inadvertent [or negligent] failure to provide adequate medical care alone does not state a claim under § 1983. A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. If the harm is an isolated exception to the defendant's overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference.

As noted above, this case presents primarily a clothing issue, a prison condition. It is clearly established that prison officials have a duty under the Eighth Amendment to provide inmates with the necessities of life, including adequate shelter, food, clothing, sanitation, medical care, and personal safety.[28] Moreover, it is clearly recognized that the denial of adequate clothing under some circumstances could inflict pain.[29] As with medical necessity claims, prison condition claims have both an objective and subjective element. The objective element is based on the severity of the deprivation and the subjective on the prison official's knowledge of the risk of serious injury or pain being inflicted by consciously ignoring the

---

[26] *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

[27] *Jett v. Penner*, 429 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks and citations omitted).

[28] *See Farmer v. Brennan,* 511 U.S. 825, 832, (1994); *Keenan v. Hall,* 83 F.3d 1083, 1089 (9th Cir. 1996); *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir. 1982); *Wright v. Rushen*., 642 F.2d 1129, 1132–1133 (9th Cir. 1981).

[29] *Walker v. Summer,* 14 F.3d 1415, 1421 (9th Cir. 1994).

prisoner's needs.[30] The circumstances, nature, and duration of a deprivation of a necessity must be considered in determining whether a constitutional violation has occurred.[31] Thus, Minnick may be liable for the failure to provide proper fitting shoes even if there is no clearly defined immediate medical necessity.[32]

This case brings to mind the often quoted current colloquial adaptation of the age-old verse by George Herbert (*Jacula Prudentum (Outlandish Proverbs)*, *circa* 1625):[33]

For want of a nail, the shoe was lost,
for want of a shoe, the horse was lost,
for want of a horse, the knight was lost,
for want of a knight, the battle was lost,
for want of a battle the kingdom was lost,
all for the want of a nail.

It appears undisputed, indeed, probably indisputable, that ill-filling shoes cause pain and discomfort. It is also undisputed that a period of more than eight months lapsed between the time it was first noted in Physician's Orders that Lopez needed a EEE shoe size and the time he received properly fitting shoes. Thus, it cannot be said that satisfactory resolution of Lopez' needs was not delayed. However, to rise to the dimension of a Constitutional violation, the "need" must be related to a serious condition, *i.e.*, one that adversely affects the person's daily activities or causes chronic and serious pain.[34] In addition, a defendant must purposely ignore or fail to respond to a prisoner's pain or medical need in order for deliberate indifference to be

[30] *See, e.g., Collins v. State*, 2006 WL 1587467, Slip Op. *2 (W.D. Va. June 6, 2006); *Lavender v. Lampert*, 242 F.Supp.2d 821, 845–846 (D. Or. 2002); *ASHANN-RA v. Commonwealth of Virginia*, 112 F.Supp.2d 559, 562–63 (W.D. Va. 2000).

[31] *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000), citing *Hopowit*, 682 F.2d at 1259 ("[t]he more basic the need, the shorter the time it may be withheld").

[32] The Court finds the reasoning in *Lavender* persuasive: "a reasonable official who observed, or who was notified about, plaintiff's injuries sustained from inappropriate footwear, would know that delays or failure to mitigate or prevent further pain and damage would constitute 'unnecessary and wanton infliction of pain,' and would therefore violate an established constitutional right." The ultimate findings in *Collins* and *ASHANN-RA* are distinguishable from this case and *Lavender*. In neither case was there any evidence that the prisoner had suffered any serious pain, injury or other deleterious effect from the denial of properly fitting shoes.

[33] Herbert only included the first three lines, the final lines were added later by unknown hands.

[34] *See Lopez*, 203 F.3d at 1131–1132.

established. Where the claim is based upon delay in providing a specified treatment, a prisoner has no claim for deliberate medical indifference unless the delay was harmful.[35]

For the purposes of ruling on the cross-motions for summary judgment the Court may not weigh credibility but must accept as true the statements contained in the affidavits.[36] The evidence must also be viewed in the light most favorable to the non-moving party. Applying those principles to the case at bar, the Court finds that there are genuine triable issues of fact.

Lopez' testimony is that he suffered serious pain and injury from the failure to provide him properly fitting shoes. This testimony, if accepted, establishes the seriousness of the condition.[37] On the other hand, Minnick has submitted evidence that Lopez did not suffer any serious injury or pain as a result of the failure to provide him with the proper size footwear.[38] This evidence, if accepted, would negate the "serious medical condition" prong as well as any harm from the delay. Thus, credibility is an issue presenting a triable issue of fact. In addition, Minnick has submitted evidence that tends to establish that the physicians did not view Lopez' situation as constituting a serious medical condition. Minnick, who is not a doctor, cannot be said to be acting with deliberate indifference to a serious medical problem that the physicians who either examined Lopez or reviewed his medical records do not view as existing.[39]

---

[35] *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

[36] *Dominguez-Curry v. Nevada Transp. Dept.*, 437 F.3d 1027, 1035–36 (9th Cir.2005); *see Bodett v. CoxCom, Inc.,* 366 F.3d 736, 742 (9th Cir. 2004) ("[i]n other words, the factfinder's general duty to draw all reasonable inferences in favor of the nonmovant does not require that the court make a credibility determination on the [movant's] evidence at the summary judgment stage, even if it has reason to disbelieve that evidence); *see also Williams v. Calderon*, 48 F.Supp.2d 979, 989 (C.D.Cal. 1998) (noting in the context of a habeas claim "[t]he Court is not to determine issues of credibility on a motion for summary judgment; instead, the truth of each party's affidavits is assumed"), *aff'd sub nom. Williams v. Woodford*, 384 F.3d 567 (9th Cir. 2004).

[37] Although Lopez alleges he suffered permanent scarring, Metatarsalgia, and Hammertoe, the medical records submitted by the parties do not establish that those conditions were either observed or diagnosed by the medical professionals responsible for his treatment.

[38] Lopez attacks the credibility of the Declaration of Dr. Klarich on this issue and points to what he terms as being either false or incorrect statements and requests the Court either strike or disregard them. As noted above, however, it would be improper for the Court to so do.

[39] *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

Lopez testifies that Minnick was the person who refused to provide the footwear. Minnick on the other hand disputes this, albeit somewhat obliquely, on the basis that she was not normally the person in laundry room. This conflicting evidence also presents a triable issue of fact.

Lopez also asserts that Minnick not only refused to provide him the shoes as prescribed but that she refused to even order them. While the fact Lopez was not provided shoes of a correct size is uncontested, Minnick counters that under standard procedures: (1) she routinely submitted special orders to the Prison Industrial Authority once every 90 days; (2) she was required to order through the PIA; and (3) it took PIA anywhere from three to six months to fill an order. This creates a triable issue of fact of whether Minnick deliberately refused to provide the shoes or was, as a practical matter, unable to so do.

Lopez testifies that Minnick was made aware of the fact that the size EEE shoes were medically necessary by a member of the institution's medical staff. Minnick submits evidence that, if accepted, would tend to establish that Minnick not only did not receive but could not possibly have received any such notice because there was no medical necessity for immediately furnishing shoes of a proper size. This creates a triable issue of fact on whether Minnick had the requisite knowledge that a failure to provide properly fitting shoes would cause Lopez serious pain or injury.

Minnick has also claimed she is entitled to qualified immunity. Qualified immunity is analyzed using the two-step inquiry set forth in *Saucier v. Katz*.[40] The first step of the *Saucier* analysis requires the court to decide whether the refusal to provide Lopez with the proper fitting shoes violated his constitutional rights.[41] If so, "the next, sequential step is to ask whether the right was clearly established."[42] For a right to be clearly established, its contours "'must be sufficiently clear that a reasonable official would understand that what he is doing violates the

---

[40] 533 U.S. 194 (2001).

[41] *Id.* at 201.

[42] *Id.*

right.'"[43] The protection afforded by qualified immunity "safeguards 'all but the plainly incompetent or those who knowingly violate the law.'"[44]

As noted above, it was clearly established in 1997 that Lopez had a constitutional right to adequate clothing, including shoes. The flaw in Minnick's position is that it presupposes that the facts are as she has presented them. However, the court must view the evidence in the light most favorable to Lopez, the non-moving party. So viewed the facts show: (1) Lopez required size EEE shoes; (2) this fact was confirmed by a prison physician; (3) Minnick was apprised of both the need for size EEE shoes and that it had been medically verified; (4) Minnick refused to order proper size shoes; (5) this caused Lopez to suffer pain and injury; and (6) this condition persisted for an appreciable period of time. Under these facts, if proven, Minnick is not entitled to qualified immunity. On the other hand, if these facts are not proven, Minnick is not only entitled to qualified immunity but, in addition, there is no Eighth Amendment violation.

VI. CONCLUSION/ORDER

Based upon the foregoing,

1. Plaintiff's Motion for Summary Judgment at docket 234 is DENIED, and

2. Defendant's Motion for Summary Judgment at docket 251 is DENIED.

Dated June 22, 2006

s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[43] *Id.* at 202. (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1997)).

[44] *Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist.*, 149 F.3d 971, 977 (9th Cir. 1998); (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).