1
2
3
4
5
6
7
8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANDREW RICK LOPEZ,

11             Plaintiff,              No. CIV S-98-02111 LKK EFB P

12        vs.

13   D. PETERSON, et al.,
                                       ORDER AND
14             Defendants.             FINDINGS AND RECOMMENDATIONS

15   _____/

16        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17   U.S.C. § 1983.  This action is before the undersigned pursuant to Eastern District of California

18   Local Rule 302(c)(17).  *See* 28 U.S.C. § 636(b)(1).  Presently before the court are defendants

19   Singletary, Wright, Haas, Diggs, Babbich, Baughman, McClure, South- Gilliam, Reyes, D.

20   Peterson, Holmes, C.J. Peterson, Castro, Park, Jennings and Runnels' ("defendants") motion to

21   dismiss (Docket No. 333), and plaintiff's motion for appointment of counsel (Docket No. 344).

22   For the reasons stated below, defendants' motion to dismiss must be granted in part and denied

23   in part.  In addition, plaintiff's motion for appointment of counsel must be denied.

24   ////

25   ////

26   ////

                                  1

## I.    Background

This action proceeds on plaintiff's October 7, 2009 second amended complaint against the sixteen defendants named above. *See* Dckt. Nos. 319, 323, 332. The complaint asserts claims based on twelve distinct incidents:[1]

> (1) After Plaintiff arrived at High Desert State Prison (HDSP) on January 14, 1997, non-Defendant correctional staff intentionally withheld some of Plaintiff's legal property. (CR 319 ¶¶ 23-25.) On February 2, 1997, Singletary filed a false declaration that claimed Plaintiff received all of his property, and Castro, D. Peterson, McClure, Diggs, Jennings, Wright, and Runnels failed to properly train or supervise the unnamed staff that disposed of Plaintiff's property. (CR 319 ¶¶ 26, 80, 95);

> (2) Between August 1997 and November 1999, Castro and D. Peterson wrongfully maintained lockdown conditions at the prison. (CR 319 ¶¶ 67, 70, 122, 124);[2]

> (3) On August 12, 1997, Wright wrongfully deprived Plaintiff of some of his legal property. (CR 319 ¶¶ 43, 72);

> (4) On August 21, 1997, Wright falsely accused Plaintiff of participating in a riot in Rules Violation Report number 97-08-066, which was later dismissed. (CR 319 ¶¶ 43, 72(b), 96, 120) Furthermore, Plaintiff contends that in 1998, Wright, Reyes, and C. Peterson wrongfully caused Rules Violation Report number 97-08-066 to be reissued, before the charge was again dismissed (CR 319 ¶¶ 72(c), 73(b), 89-91);

---

[1] This summary of plaintiff's allegations is taken from defendants' motion to dismiss. The court has added additional observations at to the complaint in footnotes two through six.

Plaintiff argues that the summary is "absurd," "factually incorrect," and "misleading." Dckt. No. 335 at 6, 8. He contends "the complaint contains a constellation of ongoing claims and issues" and prefers his organization of the complaint into ten separate causes of action. *Id.* at 6, 8-14. The undersigned has thoroughly reviewed plaintiff's prolix, 36 page, single-spaced, complaint. With its length, and repetition of factual allegations, which are not in chronological order, the document is very difficult to follow. While the complaint sets out ten "causes of action," its organization is confusing, and the underlying allegations are convoluted. *See, e.g.,* Dckt. No. 319 at 15 ("THIRD CAUSE OF ACTION: Defendants . . . subjected me to malicious prosecution by issuing . . . false charges, doing so with malice and without probable cause . . . for the purpose of denying me equal protection, and my First, Fifth, Eighth and Fourteenth Amendment rights . . . [and] [b]y subjecting me to Double-Jeopardy . . . denying court access."). Defendants' summary is neither false nor misleading, but rather, fairly summarizes the factual allegations stated in the complaint but presents the summary in a logical manner based upon the twelve distinct incidents allegedly giving rise to plaintiff's claims against defendants.

[2] Plaintiff alleges he was subjected to the lockdown conditions until December 8, 1999, when he "departed HDSP C-facility." Dckt. No. 319 ¶ 70.

2

(5) On August 27, 1997, Babich violated Plaintiff's due process rights by failing to provide Plaintiff with notice of a hearing, at which Plaintiff's job assignment was changed from paid to unpaid. (CR 319 ¶ 103);

(6) Between February 1998 and March 1999, Park failed to provide Plaintiff with dental care. (CR 319 ¶¶ 82, 102);

(7) On May 5, 1998, Reyes denied Plaintiff's request for a transfer because Plaintiff had a pending rules violation hearing. (CR 319 ¶¶ 73(a), 101(a));

(8) On June 1, 1998, Holmes wrongfully issued Plaintiff Rules Violation Report 98-06-009 after Plaintiff refused to permit Holmes to photograph his tattoos. (CR 319 ¶ 74) Furthermore, Plaintiff alleges that C. Peterson unlawfully reduced the charge from a serious rules violation to administrative matter prior to the hearing for Rules Violation Report 98-06-009, and C. Peterson excluded relevant evidence during the rules violation hearing. (CR 319 ¶¶ . . . 71, 93 . . . 111, 112) Plaintiff contends that D. Peterson conspired with C. Peterson to affect the outcome of Plaintiff's rules violation hearing, and Castro and Jennings learned of Plaintiff's allegations though the administrative grievances process. (CR 319 ¶¶ . . . 71, 93 . . . 111, 112);[3]

(9) On January 5, 1999, Babich, Baughman, and Diggs wrongfully failed to reduce Plaintiff's classification score. (CR 319 ¶ 66) On January 28, 1999, Reyes retaliated against Plaintiff by wrongfully raising his classification score by twelve points. (CR 319 ¶¶ 64, 73(d), 101(b)) Plaintiff claims that Runnels and Jennings learned of Plaintiff's allegations against Reyes though the administrative grievances process. (CR 319 ¶¶ [101[4]](b), 111, 112);[5]

(10) On February 1, 1999, inmate-Garcia gave Reyes some of Plaintiff's legal documents, and Reyes wrongfully refused to return the property to Garcia. (CR 319 ¶ 46);

---

[3] Defendants' citations to paragraphs 7 and 100, which appear to be unrelated to the allegations in paragraph 8, are omitted here. *See* Dckt. No. 319 ¶¶ 7, 100.

[4] Defendants cited to paragraphs 83(b), 111, and 112 as the sources for plaintiff's allegation that Runnels and Jennings learned of plaintiff's allegations against Reyes through the administrative grievance process. However, paragraph 83 is not relevant to those allegations. Rather, it is paragraphs 101(b), 111 and 112, wherein plaintiff alleges that on May 29, 1999, Jennings and Runnels "rubber-stamped" Reyes' decision to lower plaintiff's score, and that their decision was "overturned only after [the] appeal went beyond HDSP," to the Director's Level of review.

[5] Additional allegations apparently relating to paragraph 9 can be found in paragraphs 43(d), 44, 49, 51, 52, 77(a)-(b), 78(b), 103(c), and 106 of the second amended complaint. *See* Dckt. No. 319. Liberally construed, these allegations also support a retaliation claim against defendants Babich, Baughman and Diggs based upon their alleged failure to reduce plaintiff's classification score on January 5, 1999.

1    (11) On February 25, 1999, Haas falsely identified Plaintiff as a "shot caller." (CR 319 ¶ 47);

2

3    (12) On March 16, 1999, McClure, Diggs, Wright, and South-Gilliam retaliated against Plaintiff by unlawfully placing him on C-status. (CR 319 ¶¶ 43(f), 72(d), 75, 76(c), 77(c), 78(c), 79, 97, 105, 107, 108).[6]

4

5    Dckt. No. 333 at 4-5.

6    **II.    Defendants' Motion to Dismiss**

7    Defendants move to dismiss the complaint for failure to state a claim and for failure to

8    exhaust administrative remedies pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6)

9    and 12(b).  Dckt. No. 333.

10    On April 26, 2011, plaintiff filed a document titled "Notice of Defendants' Intentional

11    Fraud on the Court and the Public.  Request for Counsel.  And Request for Sanctions."  Dckt.

12    No. 335.  In this document, plaintiff (1) requested counsel; (2) requested that the court sanction

13    defendants for fraud by revoking defense counsel's license to practice law; (3) requested

14    extensions of time to respond to the motion to dismiss because he was not in possession of all of

15    his property; and (4) substantively opposed the motion to dismiss, with citations and quotations

16    from recent case law, CDCR regulations, and numerous docket entries in this action.  *See id.* at

17    1, 2 n.1, 3-16.

18    Because plaintiff's April 26th filing addressed the merits of defendants' motion to

19    dismiss, but also requested an extension of time to oppose the motion to dismiss, defendants

20    sought clarification from the court.  Dckt. No. 336.  Accordingly, on May 27, 2011, the court

21    granted plaintiff 30 days to either file an opposition to the motion to dismiss, or a statement

22    indicating that his April 26th filing would serve as his opposition brief.  Dckt. No. 337.

23    ////

24

25    [6] The incident described in paragraph 12 also encompasses plaintiff's allegations that on May

26    4, 1999, defendants Jennings and Runnels violated plaintiff's right to due process by approving the C-status placement.  Dckt. No. 319 ¶¶ 111-112.

1   The court also denied plaintiff's requests for counsel and sanctions.[7]  *Id.*

2          In response, plaintiff filed a "Request for Order Requiring that his Legal Property Be

3   Provided."  Dckt. No. 339.  He also requested counsel, and asked for clarification of the May

4   27th order, stating that it left him "very confused."  Dckt. No. 340.  Plaintiff followed up with

5   another filing, indicating that his April 26th filing would serve as his opposition brief, but

6   describing that decision as "forced," because the court would not appoint counsel, he did not

7   have access to his property, and he did not want to risk dismissal of his case.  Dckt. No. 341.

8          Thereafter, plaintiff was granted a 30 day extension of time to file an amended opposition

9   brief.  Dckt. No. 342 (Order dated September 13, 2011).  The court also informed plaintiff that, if

10  needed, he could file a request more time along with an explanation as to why he had been

11  unable to complete the opposition brief in the time allowed.  Dckt. No. 342.  Plaintiff was also

12  informed that if he failed to seek an additional extension of time, his April 26th filing would

13  serve as his opposition brief.  *Id.*  Plaintiff did not seek an additional extension of time.[8]

14  Accordingly, the April 26th filing is deemed to be plaintiff's opposition to defendants' April

15  14th motion to dismiss.

16      **A.      Exhaustion Under the PLRA**

17          The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought

18  with respect to prison conditions [under section 1983 of this title] until such administrative

19  remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "Prison conditions" subject to

20  _____

21          [7] Thereafter, plaintiff filed a "Correction of Record," to clarify that his April 26th filing
    requested that defendants be sanctioned for "Intentional Fraud of the Court and Public" on the

22  grounds that defendants had lied at the public expense.  Dckt. No. 338.  This filing also included
    numerous citations and quotations from state and federal case law.  *Id.*

23          [8] Instead, plaintiff filed "Objections" to the September 13, 2011 order granting him
    additional time to file an amended opposition brief.  Dckt. No. 343.  In those objections, plaintiff

24  asked the district judge to vacate the undersigned's September 13, 2011 order.  *Id.* at 6.  Plaintiff
    also requested that the district judge acknowledge that plaintiff did "not intend to supplement or

25  amend [his] opposition to defendants' motion to dismiss," because he does not have the necessary
    legal property and does not intend to "re-explain about [his] property to gain extension(s) that [he]

26  did not request."  *Id.*

the exhaustion requirement have been defined broadly as "the effects of actions by government officials on the lives of persons confined in prison . . . ." 18 U.S.C. § 3626(g)(2); *Smith v. Zachary*, 255 F.3d 446, 449 (7th Cir. 2001); *see also Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002). To satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint, but need only provide the level of detail required by the grievance system itself. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials "time and opportunity to address complaints internally before allowing the initiation of a federal case").

Prisoners who file grievances must use a form provided by the California Department of Corrections and Rehabilitation, which instructs the inmate to describe the problem and outline the action requested. The grievance process, as defined by California regulations, has three levels of review to address an inmate's claims, subject to certain exceptions. *See* Cal. Code Regs. tit. 15, § 3084.7. Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims. *Id.* § 3084.1(b).

Proper exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). For a remedy to be "available," there must be the "possibility of some relief. . . ." *Booth*, 532 U.S. at 738. Relying on *Booth*, the Ninth Circuit has held:

> [A] prisoner need not press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available.

*Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

Although a motion to dismiss for failure to exhaust administrative remedies prior to filing suit is normally brought under Rule 12(b) of the Federal Rules of Civil Procedure, when ruling

1   on such a motion requires the court to look beyond the pleadings in the context of disputed

2   issues of fact the court must do so under "a procedure closely analogous to summary judgment."

3   *Wyatt v. Terhune*, 315 F.3d 1108, 1119, n.14 (9th Cir. 2003).  Because care must be taken not to

4   resolve credibility on paper as it pertains to disputed issues of material fact, the undersigned

5   applies the Rule 56 standards to exhaustion motions that require consideration of materials

6   extrinsic to the complaint.  *See Chatman v. Felker*, No. Civ. S-06-2912 LKK EFB, 2010 WL

7   3431806, at *2-3 (E.D. Cal. Aug. 31, 2010).

8        Defendants bear the burden of proving plaintiff's failure to exhaust.  *Wyatt*, 315 F.3d at

9   1119.  To bear this burden:

10       a defendant must demonstrate that pertinent relief remained available, whether at
         unexhausted levels of the grievance process or through awaiting the results of the
11       relief already granted as a result of that process. Relevant evidence in so
         demonstrating would include statutes, regulations, and other official directives
12       that explain the scope of the administrative review process; documentary and
         testimonial evidence from prison officials who administer the review process; and
13       information provided to the prisoner concerning the operation of the grievance
         procedure in this case . . . . With regard to the latter category of evidence,
14       information provided [to] the prisoner is pertinent because it informs our
         determination of whether relief was, as a practical matter, "available."

15

16  *Brown*, 422 F.3d at 936-37 (citations omitted).

17       On December 7, 1999, the court informed plaintiff of the requirements for opposing a

18  motion to dismiss for failure to exhaust available administrative remedies as well as a motion

19  pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154 F.3d

20  952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*,

21  849 F.2d 409 (9th Cir. 1988); *Wyatt*, 315 F.3d at 1120, n.14.

22  **B.      Rule 12(b)(6) Standards**

23       To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

24  must contain more than a "formulaic recitation of the elements of a cause of action"; it must

25  contain factual allegations sufficient to "raise a right to relief above the speculative level."  *Bell*

26  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more

7

1   . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of

2   action." *Id.* (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-

3   236 (3d ed. 2004)).  "[A] complaint must contain sufficient factual matter, accepted as true, to

4   'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

5   (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff

6   pleads factual content that allows the court to draw the reasonable inference that the defendant is

7   liable for the misconduct alleged."  *Id.*  Dismissal is appropriate based either on the lack of

8   cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal

9   theories.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

10         In considering a motion to dismiss, the court must accept as true the allegations of the

11  complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe

12  the pleading in the light most favorable to the party opposing the motion, and resolve all doubts

13  in the pleader's favor.  *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869

14  (1969).  The court will "'presume that general allegations embrace those specific facts that are

15  necessary to support the claim.'"  *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256

16  (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  The court may

17  consider facts established by exhibits attached to the complaint.  *Durning v. First Boston Corp.*,

18  815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also consider facts which may be judicially

19  noticed, *Mullis v. U.S. Bankr. Ct.*, 828 F.2d at 1388, and matters of public record, including

20  pleadings, orders, and other papers filed with the court.  *Mack v. South Bay Beer Distribs.*, 798

21  F.2d 1279, 1282 (9th Cir. 1986).

22         Pro se pleadings are held to a less stringent standard than those drafted by lawyers.

23  *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir.

24  1985).  However, the court's liberal interpretation of a pro se litigant's pleading may not supply

25  essential elements of a claim that are not plead.  *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir.

26  1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

1   Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual

2   allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v.*

3   *Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  The court need not accept

4   unreasonable inferences, or unwarranted deductions of fact.  *W. Mining Council v. Watt*, 643

5   F.2d 618, 624 (9th Cir. 1981).  A pro se litigant is, however, entitled to notice of the deficiencies

6   in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be

7   cured by amendment.  *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

8       **C.    Discussion**

9       Exhaustion is a prerequisite to filing suit.  *See* 42 U.S.C. § 1997e(a) ("No action shall be

10  brought with respect to prison conditions . . . until such administrative remedies as are available

11  are exhausted."); *see also McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam)

12  (requiring dismissal where prisoner fails to exhaust administrative remedies before filing suit and

13  tries to do so while case is pending).

14      Plaintiff's argues that under the "law of the case doctrine,"[9] he must be allowed to

15  proceed on claims for money damages, even if those claims are not exhausted.  *See* Dckt. No.

16  335 at 4, 6-7 (citing Dckt. No. 12).  He is mistaken.  Plaintiff refers to a June 10, 1999 order

17  issued in this case which stated that he "need not exhaust his claims for monetary damages"

18  because "[m]onetary relief cannot be afforded through the California Department of Corrections

19  inmate grievance procedure."  Dckt. No. 12 at 2.  Nothing in that order bars consideration of the

20  exhaustion issue on this motion.

21      After the June 10, 1999 order, intervening controlling authority clarified that prisoners

22  must indeed exhaust administrative remedies even when the prisoner's suit seeks monetary

23  _____

24      [9] Under the law of the case doctrine, "a court is ordinarily precluded from reexamining an
    issue previously decided by the same court, or a higher court, in the same case." *United States v. Bad
    Marriage*, 439 F.3d 534, 538 (9th Cir. 2006).  A prior decision should be followed unless (1) the
25  decision is clearly erroneous and its enforcement would work a manifest injustice; (2) intervening
    controlling authority makes reconsideration appropriate; or (3) substantially different evidence was
26  adduced at a subsequent trial.  *Hegler v. Borg*, 50 F.3d 1472, 1475 (9th Cir. 1995).

9

1  damages that are unavailable through the prison's grievance process.  *See Booth v. Churner*, 532

2  U.S. 731, 734-35, 741 (2001).  That authority is binding here.  Additionally, on May 26, 2009,

3  the Court of Appeals for the Ninth Circuit dismissed several of the claims raised in plaintiff's

4  May 11, 1999 amended complaint, as unexhausted.  *See* Dckt. No. 304 (citing *Woodford v. Ngo*,

5  548 U.S. 81, 90-91 (2006) (explaining that "proper exhaustion" requires adherence to

6  administrative procedural rules) and *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir.

7  2002) (per curiam) (holding that exhaustion under 42 U.S.C. § 1997e(a) must occur prior to

8  commencement of the action)).

9      Plaintiff argues that a dismissal without prejudice "will operate as a dismissal with

10  prejudice" and would be "fundamentally unjust and substantially prejudicial . . . ."  Dckt. No.

11  335 at 7.  However, regardless of whether plaintiff will be successful in bringing any dismissed

12  claim in a new lawsuit, he did not properly exhaust some of his claims and controlling case law

13  requires that they be dismissed.

14      Defendants argue that the claims predicated on the allegations summarized above in

15  paragraphs 1-8, 10, and 12, should be dismissed because they are unexhausted.  Dckt. No. 333 at

16  6-8.  As to these claims plaintiff contends that defendants violated his civil rights between

17  January 1997 and December 1999.  Under then existing regulations, plaintiff was required to file

18  a grievance within "15 working days of the event or decision being appealed . . . ."  Cal. Code

19  Regs. tit. 15, § 3084.6(c) (1999).  Defendants submit evidence showing that between January

20  1997 and May 1999, plaintiff filed twenty grievances.[10]  Dckt. No. 333, Exs. C, E-Z.  Because

21  the record submitted by defendants does not extend beyond May 1999, it does not allow the

22  court to determine whether plaintiff did or did not exhaust any claims based on allegations

23

24      [10] Plaintiff contends that since 1997, he has filed 43 grievances.  Dckt. No. 335 at 3.  This
does not, however, undermine defendants' evidence that from January 1997 to May 1999, plaintiff
25  filed only twenty grievances.  Nor does the fact that he may have filed 43 grievances establish that
he exhausted available remedies as the claims in question here.  He does not explain in any detail
26  how any of his additional 23 grievances, apparently filed after May 1999, would have exhausted any
of the claims alleged in the complaint.

10

1    regarding events in or after mid-May 1999.  As to the allegations regarding events between

2    January 1997 and early May 1999, however, defendants have provided a complete record of

3    plaintiff's administrative grievance history.

4            1.    **Claims Alleged in Paragraph 1**

5            Paragraph 1 includes plaintiff's allegations that (1) he was deprived of his personal

6    property in January 1997 upon his arrival to High Desert State Prison, (2) in February 1997,

7    defendant Singletary filed a false declaration claiming plaintiff had received all of his property,

8    and (3) that defendants Castro, D. Peterson, McClure, Diggs, Jennings, Wright, and Runnels

9    failed to properly train or supervise the unnamed staff that disposed of plaintiff's property.

10           The court has carefully reviewed each of the twenty grievances submitted by defendants

11   and finds that only one of them would have alerted prison officials to any of the allegations made

12   in paragraph 1.  *See* Dckt. No. 333, Exs. G-Z; *see also id.*, Ex. F (including a chart that briefly

13   summarizes the issues raised in each of the twenty grievances).  In grievance number 97-0817,

14   dated February 17, 1997, plaintiff complained that officials at California State Prison,

15   Sacramento had failed to transfer all of his personal property to High Desert State Prison and that

16   officials had not followed through with statements to plaintiff that his property would be

17   returned.  Dckt. No. 333, Ex. G.  Defendants' evidence shows that this grievance was denied at

18   the second-level of review on September 16, 1997, and that plaintiff did not seek Director's

19   Level review.[11]  *Id.*, Ex. G, Ex. B ¶¶ 4-7, Ex. A.  Defendants have shown that administrative

20   relief remained available to plaintiff for the claims alleged in paragraph 1.

21   ////

---

22           [11] The copy of grievance number 97-0817 shows that on May 23, 1997, plaintiff filled out
23   the portion of the appeal requesting Director's Level review.  *See* Dckt. No. 333, Ex. G at 8.  Had
     plaintiff filed this grievance at the Director's Level on May 23, 1997, it would have been properly
24   rejected because review at the second level had not yet been completed.  *See* Cal. Code Regs. tit. 15,
     § 3084.5(c) (1997). As discussed above, however, defendants' evidence shows that plaintiff did not
25   actually pursue this grievance to the Director's Level of review.  *See Woodford*, 548 U.S. at 90
     ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural
26   rules . . . .").

In opposition, plaintiff points to the allegations in his verified complaint that on August 26, 1997, he submitted a grievance to defendant Wright and that Wright never responded to it. Dckt. No. 335 at 7 (citing Dckt. No. 319 ¶ 43B).  However, plaintiff alleges that the grievance he gave to Wright on August 26, 1997 concerned Wright's alleged confiscation of plaintiff's legal property on August 12, 1997.  *See* Dckt. No. 319 ¶¶ 43, 43B.  That grievance would not have put prison officials on notice of the claims raised in paragraph 1 regarding the alleged mishandling of plaintiff's property in January and February 1997.  Moreover, Wright's alleged actions would not create any dispute as to whether plaintiff failed to seek Director's Level review of grievance number 97-0817, after receiving the second level response on September 16, 1997.

Plaintiff also states that the Inspector General "noted deficiencies and recommended changes" to High Desert State Prison's administrative appeal system, and that the system was the subject of "numerous investigations."  Dckt. No. 335 at 3.  Aside from plaintiff's discussion of defendant Wright's alleged actions regarding an August 26, 1997 grievance, plaintiff neither explains nor submits evidence showing exactly how any "deficiencies" or "investigations" interfered with his ability to exhaust administrative remedies as to any of the claims alleged in the complaint.

Accordingly, claims based on the allegations in paragraph 1 should be dismissed without prejudice as unexhausted.

### 2.   Claims Alleged in Paragraph 2

Paragraph 2 includes plaintiff's allegations that between August 1997 and December 1999, defendants Castro and D. Peterson wrongfully maintained lockdown conditions at the prison.  *See* Dckt. No. 319, ¶¶ 67, 70, 122, 124.

The court has carefully reviewed each of plaintiff's grievances and finds that none of them would have alerted prison officials to the claims raised in paragraph 2.  *See* Dckt. No. 333, Exs. G-Z; *see also id.*, Ex. F (including a chart that briefly summarizes the issues raised in each of the twenty grievances).  Defendants' evidence shows that plaintiff had not exhausted the

12

1   claims raised by paragraph 2 at the time he filed his amended complaint on May 11, 1999. *See*

2   Dckt. No. 10 (dated May 7, 1999), ¶ 146 (alleging that "since August 12, 1997," prison officials

3   at High Desert State Prison had kept plaintiff on lockdown).   Accordingly, claims based on

4   alleged lockdown conditions existing before May 7, 1999, must be dismissed as unexhausted.

5   *See McKinney*, 311 F.3d at 1199-1201 and *Rhodes v. Robinson*, 621 F.3d 1002, 1004-07 (9th

6   Cir. 2010) (together holding that claims must be exhausted prior to the filing of the original or

7   supplemental complaint).

8          As noted, however, defendants' evidence regarding plaintiff's administrative grievance

9   history does not extend past May 1999.  Thus, defendants have not carried their burden of

10  proving the absence of exhaustion of the claim that defendants Castro and D. Peterson

11  unlawfully maintained lockdown conditions from May 7, 1999 through December 8, 1999.  It is

12  defendants, not plaintiff, that bears the burden of proof on the issue.  Because defendants'

13  evidence does not account for any administrative grievances plaintiff might have filed regarding

14  this claim, it cannot be dismissed as unexhausted.  Defendants do not argue that this claim

15  should be dismissed on any alternate grounds.

16         **3.   <u>Claims Alleged in Paragraph 3</u>**

17         Paragraph 3 includes plaintiff's allegation that on August 12, 1997, defendant Wright

18  wrongfully deprived plaintiff of some of his legal property.  Careful review of each of plaintiff's

19  grievances shows that none of them would have alerted prison officials to the claims raised in

20  paragraph 3.  *See* Dckt. No. 333, Exs. G-Z; *see also id.*, Ex. F (including a chart that briefly

21  summarizes the issues raised in each of the twenty grievances).

22         However, plaintiff claims that he followed proper procedures for submitting a grievance

23  about this claim, but that Wright never responded to the grievance.  Dckt. No. 335 at 7 (citing his

24  verified complaint at Dckt. No. 319 ¶ 43B).  Plaintiff appears to contend that administrative

25  remedies were thus, "unavailable" as to this claim.  The PLRA does not require exhaustion when

26  circumstances render administrative remedies "effectively unavailable." *Sapp v. Kimbrell*, 623

13

F.3d 813, 822 (9th Cir. 2010).  Administrative procedures may be viewed as unavailable where "prison officials obstructed [a prisoner's] attempt to exhaust," or where a prisoner "was prevented from exhausting because procedures for processing grievances weren't followed."  *See Ngo v. Woodford*, 539 F.3d 1108, 1110 (9th Cir. 2008).  Here, there is a dispute as to whether Wright obstructed plaintiff's attempt to exhaust this claim.  Because the burden lies with defendants to demonstrate that absence of exhaustion, there is insufficient evidence to conclude on the record currently before the court that there was a failure to exhaust the claim raised in paragraph 3.

Defendants argue in the alternative that the allegations in paragraph 3 fails to state a claim upon which relief may be granted.  Dckt. No. 333 at 15, 18.  Plaintiff alleges that despite his warning to defendant Wright on August 12, 1997, that he had important legal materials in his laundry bag, Wright ordered plaintiff to go to the showers following a riot, and allowed other inmates to steal items from plaintiff's bag.  Dckt. No. 319 ¶¶ 43, 72.  Plaintiff claims this resulted in the loss of important legal research and other property.  *Id.*

Defendants argue that the above allegations fail to state a prima facie due process claim, and should be dismissed with prejudice. Where a prisoner alleges the deprivation of a liberty or property interest in violation of the Fourteenth Amendment, caused by the unauthorized negligent or intentional action of a prison official, the prisoner cannot state a constitutional claim where the state provides an adequate post-deprivation remedy.  *See, e.g., Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  California provides such a remedy for prisoners.  *See Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (per curiam) (citing California Government Code §§ 810-895).  Plaintiff's allegation regarding the August 12, 1997 unauthorized deprivation of property thus fails to state a cognizable due process claim.

////

////

////

14

However, plaintiff contends that defendants "fraudulently paint" plaintiff's allegations as "property" claims.  Dckt. No. 335 at 11.  Plaintiff argues instead that the allegations in paragraphs 43 and 72 of his complaint support an Eighth Amendment claim and a retaliation claim.  *Id.*

The paragraph 3 allegations against Wright are insufficient to establish a sufficiently serious violation that would violate the Eighth Amendment, which protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  *See Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation").

However, the allegations are sufficient to state a retaliation claim against Wright.  To prove retaliation, plaintiff must show that a state actor took some adverse action against him because of his protected conduct, and that such action chilled the inmate's exercise of his First Amendment rights and did not reasonably advance a legitimate penological purpose.  *See Rhodes*, 408 F.3d at 567-68 (9th Cir. 2005); *Barnett*, 31 F.3d at 815-16.  Plaintiff alleges that Wright saw plaintiff "almost daily," and that plaintiff was recognized as a "jailhouse lawyer" who always carried a fishnet laundry bag holding legal envelopes, and that he was known for assisting other inmates draft grievances.  Dckt. No. 319 ¶¶ 40, 42-43.  Plaintiff claims that after Wright instructed plaintiff to leave his laundry bag, plaintiff informed Wright that plaintiff would hold him responsible for the contents of plaintiff's bag.  *Id.* ¶ 43.  Plaintiff alleges that this appeared to anger Wright, who subsequently allowed other inmates "to pillage and plunder" plaintiff's items, and that his actions lacked any penological justification.  *Id.* ¶¶ 43, 72.  When plaintiff allegedly confronted Wright for his actions and stated that he would hold Wright liable as warned, Wright allegedly responded, "Do what you do best, I got a surprise for you too."  *Id.*
////
////

1    Liberally construed, the allegations suggest that Wright's actions on August 12, 1997 regarding

2    plaintiff's laundry bag, were in retaliation for plaintiff's apparent threat to file a grievance to

3    hold Wright responsible for any loss of plaintiff's property.

4           **4.**     **Claims Alleged in Paragraph 4**

5          Paragraph 4 includes plaintiff's allegations that on August 21, 1997, Wright retaliated

6    against plaintiff by falsely accusing him of participating in a riot in Rules Violation Report

7    number 97-08-066, and that in 1998, Wright, Reyes, and C. Peterson wrongfully caused Rules

8    Violation Report number 97-08-066 to be reissued.  Dckt. No. 319 ¶¶ 43, 58, 72(b)(c), 73(b), 89-

9    91, 96, 120.

10         Defendants argue that none of the twenty grievances would have alerted prison officials

11   to the claims raised in paragraph 4.  Dckt. No. 333 at 8.  However, their evidence shows that

12   plaintiff notified prison officials of at least some of those allegations through grievance number

13   98-1662.  *Id.*, Ex. R at 7 (complaining that in July 1998, defendant C. Peterson stated that Rule

14   Violation Report 97-08-066 needed to be re-heard).  *Id.*, Ex. R.  However, defendants' evidence

15   shows that this grievance was not denied at the Director's Level of review until August 27, 1999,

16   well after plaintiff first presented the court with these allegations in the original complaint on

17   October 28, 1998, *see, e.g.,* Dckt. No. 1 ¶¶ 22, 26-27, and in the first amended complaint on May

18   11, 1999, *see, e.g.,* Dckt. No. 10 ¶¶ 92-95.  *See* Dckt. No. 333, Ex. R,  Ex. B ¶¶ 4-7, Ex. A.

19         In *Rhodes v. Robinson*, 621 F.3d 1002, 1004-07 (9th Cir. 2010) the Ninth Circuit

20   clarified that the rule of *Vaden* and *McKinney* does not apply to new claims raised in a

21   supplemental complaint regarding conduct that occurred after the initial complaint was filed.[12]

22   _____

23      [12] *See Rhodes*, 621 F.3d at 1004-05 ("*McKinney* held that the PLRA's exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims, even if

24   the prisoner exhausts his administrative remedies while his case is pending.  *See* 311 F.3d at 1199. *Vaden* held that a prisoner must exhaust his administrative remedies before he tenders his complaint

25   to the district court.  *See* 449 F.3d at 1050. *Vaden* also held that the claims which are exhausted after the complaint has been tendered to the district court, but before the district court grants him

26   permission to proceed in forma pauperis and files his complaint, must be dismissed pursuant to

1  This case, however does not presents such a scenario.  In *Rhodes*, the claims that were not

2  exhausted at the time of the first complaint were premised entirely on conduct occurring *after*

3  that complaint's filing.  The court in *Rhodes* explained that an amended complaint supercedes

4  the original, rendering its filing date irrelevant.  Here, however:

> unlike *Rhodes*, in which the amended complaint was actually a supplemental
> complaint under Federal Rule of Civil Procedure 15(d), the amended complaint in
> this case is not a supplemental complaint, because it raises only claims already
> raised in the initial complaint. Under Rule 15(c)(1)(B), such an amended
> complaint relates back to date of the original complaint."

8  *Jones v. Felker*, 2011 U.S. Dist. LEXIS 13730, 2011 WL 53755 *5 (E.D. Cal. Feb. 11, 2011).

9  Plaintiff's repetition in the second amended complaint of claims that were not exhausted when

10  he filed his previous complaints, does not convert those unexhausted claims into properly

11  exhausted claims, even if they were subsequently addressed at the Director's Level of review.

12  *See McKinney*, 311 F.3d at 1199-1201 and *Rhodes*, 621 F.3d 1002, 1004-07 (9th Cir. 2010)

13  (together holding that claims must be exhausted *prior* to the filing of the original or

14  supplemental complaint).

15      Additionally, none of the other nineteen grievances would have alerted prison officials to

16  any of the allegations made in paragraph 4.  *See* Dckt. No. 333, Exs. G-Z; *see also id.*, Ex. F

17  (including a chart that briefly summarizes the issues raised in each of the twenty grievances).

18      Defendants' evidence thus shows that plaintiff failed to properly exhaust administrative

19  remedies for the claims alleged in paragraph 4.  Accordingly, those claims should be dismissed

20  without prejudice as unexhausted.

21      **5.    Claims Alleged in Paragraph 5**

22      Paragraph 5 includes the allegations that on August 27, 1997, defendant Babich violated

23  plaintiff's due process rights by failing to provide plaintiff with notice of a hearing, at which

24

25  § 1997e.  *See id.* at 1050-51. Together, these cases stand for the proposition that a prisoner must
exhaust his administrative remedies for the claims contained within his complaint before that
26  complaint is tendered to the district court.").

1    plaintiff's job assignment was changed from paid to unpaid.  Dckt. No. 319 ¶ 103.  Again, the

2    undersigned has carefully reviewed each of plaintiff's grievances and finds that none of them

3    would have alerted prison officials to the claims raised in paragraph 5.  *See* Dckt. No. 333, Exs.

4    G-Z; *see also id.*, Ex. F (including a chart that briefly summarizes the issues raised in each of the

5    twenty grievances).  Accordingly, those unexhausted. claims must be dismissed without

6    prejudice.

7             **6.       Claims Alleged in Paragraph 6**

8             Paragraph 6 includes the allegation that between February 1998 and March 1999,

9    defendant Park failed to provide plaintiff with dental care.  Dckt. No. 319 ¶¶ 82, 102.  Careful

10   review of each of plaintiff's grievances likewise shows that none of them would have alerted

11   prison officials to the claims raised in paragraph 6.  *See* Dckt. No. 333, Exs. G-Z; *see also id.*,

12   Ex. F (including a chart that briefly summarizes the issues raised in each of the twenty

13   grievances).  Accordingly, those claims are unexhausted and must be dismissed without

14   prejudice.

15            **7.       Claims Alleged in Paragraph 7**

16            Paragraph 7 includes the allegations that on May 5, 1998, defendant Reyes denied

17   plaintiff's request for a transfer because plaintiff had a pending rules violation hearing.  Dckt.

18   No. 319 ¶¶ 73(a), 101(a).  Once more, the undersigned has carefully reviewed each of plaintiff's

19   grievances and finds that none of them would have alerted prison officials to the claims raised in

20   paragraph 7.  *See* Dckt. No. 333, Exs. G-Z; *see also id.*, Ex. F (including a chart that briefly

21   summarizes the issues raised in each of the twenty grievances).  Accordingly, those claims must

22   be dismissed without prejudice as unexhausted.

23            **8.       Claims Alleged in Paragraph 8**

24            Paragraph 8 includes plaintiff's allegations that in June 1998, Rule Violation Report 98-

25   06-009 was wrongfully issued, and that plaintiff received an unfair hearing.  Dckt. No. 319

26   ¶¶ 71, 74, 93, 111, 112.  The court has carefully reviewed each of the twenty grievances

submitted by defendants and finds that only two of them could have alerted prison officials to at least some of the allegations made in paragraph 8.  *See* Dckt. No. 333, Exs. G-Z; *see also id.*, Ex. F (including a chart that briefly summarizes the issues raised in each of the twenty grievances).

In grievance number 98-1273, dated July 21, 1998, plaintiff appealed the guilty finding based on Rule Violation Report, log number 98-06-009.  Dckt. No. 333, Ex. P.  Defendants' evidence shows that this grievance was denied at the second-level of review on September 9, 1998, and that plaintiff did not seek Director's Level review.  *Id.*, Ex. P, Ex. B ¶¶ 4-7, Ex. A.

Plaintiff contends that grievances relating to Rule Violation Reports did not need to be pursued through the Director's Level.  Dckt. No. 335 at 2.  Plaintiff cites to CDCR regulation § 3084.7(b)(1), which stated that as an exception to the regular appeals process, "[a] second level review shall constitute the department's final action on appeals of disciplinary actions classified as [Administrative Rule Violations]."[13]  However, defendants' evidence shows that on August 6, 1998, plaintiff was informed that if he was dissatisfied with the second level response to his grievance, he had "15 days from the receipt of the response to forward [his] appeal for THIRD level review."  Dckt. No. 333, Ex. P at 6.  Thus, defendants' evidence shows that despite the statutory exception cited by plaintiff, prison officials offered plaintiff further administrative relief for grievance number 98-1273, but plaintiff did not pursue it.  Plaintiff therefore failed to exhaust available administrative remedies for grievance number 98-1273.

In grievance number 98-1662, dated August 8, 1998, plaintiff again complained about being found guilty of Rule Violation Report, log number 98-06-009.  Dckt. No. 333, Ex. R.  As previously discussed with respect to paragraph 4, however, this grievance was not denied at the Director's Level of review until August 27, 1999.  Further, plaintiff had already presented the court with these allegations through his original complaint on October 28, 1998, *see* Dckt. No. 1 ¶¶ 23-24, and in the amended complaint on May 11, 1999, *see, e.g.,* Dckt. No. 10 ¶¶ 96-101.  *See*

---

[13] Section 3084.7 has since been amended.  *See* Cal. Code Regs. tit. 15, § 3084.7 (2011).

*Rhodes*, 621 F.3d at 1004 (the "exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims, even if the prisoner exhausts his administrative remedies while his case is pending").  As this court previously explained,

> allowing a prisoner to file unexhausted claims, then exhaust, then file an amended complaint regarding the same, old claims contained in the original complaint would create an end-run around the rule of *McKinney* and *Vaden* "that a prisoner must exhaust his administrative remedies for the claims contained within his complaint before the complaint is tendered to the district court." *Id.* at *5-6. *Rhodes* itself repeated that rule and did not disapprove of it. *Id.*

*Jones v. Felker*, 2011 WL 53755 *5.

Defendants' evidence shows that plaintiff failed to properly exhaust administrative remedies for the claims alleged in paragraph 8.  Accordingly, those claims must be dismissed without prejudice as unexhausted.

**9.     Claims Alleged in Paragraph 9**

Defendants do not argue that the claims alleged in paragraph 9 are unexhausted.  Rather, they argue that as to paragraph 9, Jennings and Runnels should be dismissed with prejudice for failure to state a claim.

Paragraph 9 includes plaintiff's allegations that on January 5, 1999, defendants Babich, Baughman, and Diggs wrongfully failed to reduce plaintiff's classification score and that on January 28, 1999, defendant Reyes retaliated against plaintiff by wrongfully raising his classification score by twelve points.  Paragraph 9 also includes the allegations that in reviewing plaintiff's administrative grievance, defendants Runnels and Jennings "rubber-stamped" Reyes' decision to lower plaintiff's score.  Dckt. No. 319 ¶¶ 101(b), 111-112.

Defendants argue that the allegations against Runnels and Jennings fail because they are premised upon a theory of respondeat superior, and because the alleged failure to properly address a grievance cannot serve as a basis for holding Jennings and Runnels liable.  Dckt. No. 333 at 11.

////

1    An individual defendant is not liable on a civil rights claim unless the facts establish the

2    defendant's personal involvement in the constitutional deprivation or a causal connection

3    between the defendant's wrongful conduct and the alleged constitutional deprivation. *See*

4    *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th

5    Cir. 1978).  That is, plaintiff may not sue any official on the theory that the official is liable for

6    the unconstitutional conduct of his or her subordinates. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

7    Because respondeat superior liability is inapplicable to § 1983 suits, "a plaintiff must plead that

8    each Government-official defendant, through the official's own individual actions, has violated

9    the Constitution." *Id.* It is plaintiff's responsibility to allege facts to state a plausible claim for

10   relief.  *Iqbal*, 129 S. Ct. at 1949; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

11       With respect to paragraph 9, plaintiff alleges that Reyes' "clear violations were rubber-

12   stamped by defendants Jennings and Runnels, [a]nd overturned only after [his] appeal went

13   beyond HDSP.  Those acts were unlawful, lack penological justifications, were intended to

14   harass, and were arbitrary and capricious." Dckt. No. 319 ¶ 101(b).  Plaintiff's allegations seek

15   to hold Runnels and Jennings liable for Reyes' alleged violation of plaintiff's rights, even though

16   Runnels and Jennings did not personally participate in that violation.  Because there is no

17   respondeat superior liability under section 1983, plaintiff fails to state a claim upon which relief

18   may be granted.  Plaintiff's argument that defendants have "fabricated" a respondeat superior"

19   theory that does not apply, lacks merit. *See* Dckt. No. 335 at 8, 9.  Runnels and Jennings are

20   only alleged to have "rubber-stamped" Reyes' conduct as alleged by plaintiff in an

21   administrative grievance.  However, the prison grievance procedure does not confer any

22   substantive rights upon inmates and actions in reviewing and denying inmate appeals cannot

23   serve as a basis for liability under section 1983. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir.

24   2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).  These deficiencies cannot be cured

25   by amendment, and therefore must be dismissed with prejudice.

26   ////

21

1    **10.    Claims Alleged in Paragraph 10**

2    Paragraph 10 includes the allegations that on February 1, 1999, inmate-Garcia gave

3    Reyes some of plaintiff's legal documents, and Reyes wrongfully refused to return the property

4    to Garcia.  Dckt. No. 319 ¶ 46.  The undersigned has carefully reviewed each of plaintiff's

5    grievances as these allegations and again finds that none of them would have alerted prison

6    officials to the claims raised in paragraph 10.  *See* Dckt. No. 333, Exs. G-Z; *see also id.*, Ex. F

7    (including a chart that briefly summarizes the issues raised in each of the twenty grievances).

8    Accordingly, these claims must also be dismissed without prejudice as unexhausted.

9    **11.    Claims Alleged in Paragraph 11**

10    Paragraph 11 includes plaintiff's allegations that on February 25, 1999, Haas falsely

11    identified plaintiff as a "shot caller."  Dckt. No. 319 ¶ 47.  Defendants do not argue that the

12    claims alleged in paragraph 11 should be dismissed as unexhausted or for failure to state a claim

13    upon which relief may be granted.  Plaintiff may therefore proceed with this claim.

14    **12.    Claims Alleged in Paragraph 12**

15    Paragraph 12 includes plaintiff's allegations that on March 16, 1999, McClure, Diggs,

16    Wright, and South-Gilliam retaliated against Plaintiff by unlawfully placing him on C-status.

17    Dckt. No. 319 ¶¶ 43(f), 72(d), 75, 76(c), 77(c), 79, 97, 105, 107, 108.  Carefully review of each

18    of plaintiff's grievances reveals that none of them would have alerted prison officials to the

19    claims raised in paragraph 12.  *See* Dckt. No. 333, Exs. G-Z; *see also id.*, Ex. F (including a

20    chart that briefly summarizes the issues raised in each of the twenty grievances).

21    In opposition, plaintiff claims that Exhibit E of his complaint consists of a "Modification

22    Order," which proves he was granted "all available" administrative relief as to this claim.  Dckt.

23    No. 335 at 8.  While there is no "Exhibit E" to the complaint, Exhibit D to the complaint

24    includes a "Modification Order," which appears to be a June 20, 1999, second level response to

25    plaintiff's grievance number 99-01441.  Dckt. No. 319, Ex. D at 5-6.  The parties do not submit a

26    copy of grievance number 99-01441, but the second level response produced by plaintiff shows

1  that the grievance granted plaintiff the relief he requested regarding the Unit Classification

2  Committee's March 16, 1999 actions.[14]  *Id.* at 5 (indicating that plaintiff's requests to be seen by

3  the classification committee, to be returned to his previous "Work Group/Privilege Group," and

4  to be granted "S" time, were all granted).

5         To satisfy the PLRA's exhaustion requirement, an inmate is not always required to

6  appeal his grievance through all levels of review.  *See Brown*, 422 F.3d at 940 (an inmate need

7  not exhaust further levels of review upon receiving all available remedies at an intermediate

8  level of review).  However, even assuming the June 20, 1999 decision relieved plaintiff of his

9  obligation to pursue further levels of review, it does not demonstrate that he properly exhausted

10  his administrative remedies.  Plaintiff first raised his claim regarding the March 16, 1999 actions

11  in his May 11, 1999 amended complaint, over two month before receiving the June 20, 1999

12  second level response.  *See* Dckt. No. 10 ¶¶ 163-168.  Thus, plaintiff has not demonstrated that

13  he properly exhausted administrative remedies as to the claims raised by paragraph 12.  *See*

14  *McKinney*, 311 F.3d at 1199-1201 and *Rhodes*, 621 F.3d at 1004-07 (together holding that

15  claims must be exhausted prior to the filing of the original or supplemental complaint); *Rhodes*,

16  621 F.3d at 1004 (the "exhaustion requirement does not allow a prisoner to file a complaint

17  addressing non-exhausted claims, even if the prisoner exhausts his administrative remedies while

18  his case is pending").  Accordingly, these unexhausted claims must be dismissed without

19  prejudice.

20  **III.   Plaintiff's Request for Counsel**

21         On February 2, 2012, plaintiff again requested that the court appoint counsel, stating that

22  he is being denied "ALL access to his legal product," and that he is not receiving sufficient

23  library time.  Dckt No. 344.  District courts lack authority to require counsel to represent

24  _____

25      [14] It appears that plaintiff did not file this grievance until after May 1999, because it is not
included in defendants' list of grievances filed by plaintiff prior to May 1999. *See* Dckt. No. 333,
Exs. C ¶ 5, G-Z; *see also id.*, Ex. F (including a chart that briefly summarizes the issues raised in

26  each of the twenty grievances)

1    indigent prisoners in section 1983 cases.  *Mallard v. United States Dist. Court*, 490 U.S. 296,

2    298 (1989).  In exceptional circumstances, the court may request an attorney to voluntarily to

3    represent such a plaintiff.  *See* 28 U.S.C. § 1915(e)(1); *Terrell v. Brewer*, 935 F.2d 1015, 1017

4    (9th Cir. 1991); *Wood v. Housewright*, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  When

5    determining whether "exceptional circumstances" exist, the court must consider the likelihood of

6    success on the merits as well as the ability of the plaintiff to articulate his claims pro se in light

7    of the complexity of the legal issues involved.  *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir.

8    2009).  Plaintiff's filings in this action suggest that he has had ample access to his legal property

9    and the law library.  *See* Dckt. Nos. 335, 338.  Moreover, the court finds that there are no

10   exceptional circumstances in this case.  Accordingly, plaintiff's request for counsel is denied.

11   **IV.   Conclusion**

12          In light of the above, the undersigned finds that this action should proceed on (1) the

13   Eighth Amendment claim referenced by paragraph 2 based on the allegations that defendants

14   Castro and D. Peterson unlawfully maintained lockdown conditions from May 7, 1999 through

15   December 8, 1999, (2) the First Amendment retaliation claim referenced by paragraph 3 based

16   on the allegation that defendant Wright deprived plaintiff of some of his legal property on

17   August 12, 1997; (3) the Fourteenth Amendment due process and First Amendment retaliation

18   claims referenced by paragraph 9, based on the allegations that on January 5, 1999, defendants

19   Babich, Baughman, and Diggs failed to reduce plaintiff's classification score, (4) the Fourteenth

20   Amendment due process and First Amendment retaliation claims referenced by paragraph 9,

21   based on the allegations that on January 28, 1999, defendant Reyes raised plaintiff's

22   classification score, and (5) the First Amendment retaliation claim referenced by paragraph 11,

23   based on the allegations that on February 25, 1999, Haas falsely identified plaintiff as a "shot

24   ////

25   ////

26   ////

1    caller."[15]

2    Accordingly, IT IS HEREBY ORDERED that plaintiff's February 2, 2012, request for

3    appointment of counsel (Dckt. No. 344)  is denied.

4    Further, IT IS HEREBY RECOMMENDED that:

5    1.  Defendants' April 14, 2011 motion to dismiss (Dckt. No. 333) be granted as follows:

6    (a) the claims encompassed by paragraphs 1, 4, 5, 6, 7, 8, 10, and 12 be dismissed without

7    prejudice as unexhausted; (b)  the claims encompassed by paragraph 2 based on the alleged

8    lockdown conditions existing before May 7, 1999, be dismissed without prejudice as

9    unexhausted; (c) the due process and Eighth Amendment claims encompassed by paragraph 3 be

10   dismissed with prejudice for failure to state a claim; and (d) the claims against Runnels and

11   Jennings encompassed by paragraph 9 be dismissed with prejudice for failure to state a claim.

12   2.  This case proceed on plaintiff's claims that: (a) defendants Castro and D. Peterson

13   violated plaintiff's Eighth Amendment rights by maintaining lockdown conditions from May 7,

14   1999 through December 8, 1999; (b) defendant Wright retaliated against plaintiff in violation of

15   the First Amendment when he deprived plaintiff of some of his legal property on August 12,

16   1997; (c) defendants Babich, Baughman, and Diggs' calculation of plaintiff's classification score

17   violated the First and Fourteenth Amendments; (d) defendant Reyes' calculation of plaintiff's

18   classification score violated the First and Fourteenth Amendments; and (e) that Haas violated the

19   First Amendment by falsely accusing plaintiff of being a shot caller on February 26, 1999.

20   ////

21   ////

22   _____

23   [15] Defendants argue that the claims encompassed by paragraphs 1-12 are improperly joined
     under Federal Rules of Civil Procedure 18(a) and 20(a).  Dckt. No. 333 at 19-20.  They argue
24   plaintiff's claims should be severed and brought in separate lawsuits because "[i]t would be highly
     prejudicial for a jury to decide a Defendant's case after receiving hours of testimony on unrelated
25   allegations of misconduct by other correctional staff members." Id. at 20.  Given that this case is
     still at the pleading stage and the recommendation herein will significantly narrow the scope of
26   plaintiff's claims, the defendants' request to sever plaintiff's claims is denied without prejudice.

3.  Defendants Castro, D. Peterson, Wright, Babich, Baughman, Diggs, Reyes, and Haas be ordered to file an answer to the complaint within the time provided in Rule 12 of the Federal Rules of Civil Procedure.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 9, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

26