1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANDREW RICK LOPEZ,

11            Plaintiff,                   No. 2:98-cv-2111-LKK EFB P

12       vs.

13   D. PETERSON, et al.,
                                           ORDER AND
14            Defendants.                  FINDINGS AND RECOMMENDATIONS

15   _____/

16       Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17   U.S.C. § 1983.[1]  Defendants Singletary, Wright, Haas, Diggs, Babbich, Baughman, McClure,

18   South- Gilliam, Reyes, D. Peterson, Holmes, C.J. Peterson, Castro, Park, Jennings and Runnels

19   ("defendants") move to dismiss.

20       The defendants initially filed a motion to dismiss on April 14, 2011.  Electronic Case

21   Filing (hereafter "ECF") No. 333.  The court issued findings and recommendations to grant the

22   motion in part (ECF No. 345), but then vacated those findings and recommendations in light of

23   the recent decision of *Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012) (ECF No. 350).  After

24   vacating the findings and recommendations, the court directed defendants to re-file and re-serve

25   _____

26   [1] This action is before the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(17).  *See* 28 U.S.C. § 636(b)(1).

1

their motion, along with the notice to plaintiff required by *Woods*.  ECF No. 350.  On August 30, 2012, defendants re-filed and re-served their motion as instructed.[2]  ECF Nos. 352, 353.  Plaintiff then filed an opposition (ECF No. 355), and defendants filed a reply (ECF No. 358).  For the reasons stated below, defendants' motion to dismiss must be granted in part and denied in part.

## I.   Background

This action proceeds on plaintiff's October 7, 2009 second amended complaint against the sixteen defendants named above.  *See* ECF Nos. 319, 323, 332.  The complaint asserts claims based on twelve distinct incidents:[3]

> (1) After Plaintiff arrived at High Desert State Prison (HDSP) on January 14, 1997, non-Defendant correctional staff intentionally withheld some of Plaintiff's legal property. (CR 319 ¶¶ 23-25.[[4]])  On February 2, 1997, Singletary filed a false declaration that claimed Plaintiff received all of his property, and Castro, D. Peterson, McClure, Diggs, Jennings, Wright, and Runnels failed to properly train or supervise the unnamed staff that disposed of Plaintiff's property.  (CR 319 ¶¶ 26, 80, 95);

/////

/////

_____

[2] Plaintiff's contention that defendants have "committed fraud" by re-filing the same motion to dismiss, without modifying it to address certain arguments in plaintiff's original opposition or certain findings contained within the now-vacated findings and recommendations, lacks merit.  ECF No. 355 at 21-24.  The court instructed defendants to re-file the same motion to dismiss and did not grant them leave to amend.  Defendants re-filed and re-served the motion as instructed.

[3] This summary of plaintiff's allegations is taken from defendants' motion to dismiss.  The court has added additional observations to the complaint in subsequent footnotes.
The court has thoroughly reviewed plaintiff's prolix, 36 page, single-spaced, complaint.  With its length, and repetition of factual allegations, which are not in chronological order, the document is very difficult to follow.  While the complaint sets out ten "causes of action," its organization is confusing, and the underlying allegations are convoluted.  *See, e.g.*, ECF No. 319 at 15 ("THIRD CAUSE OF ACTION: Defendants . . . subjected me to malicious prosecution by issuing . . . false charges, doing so with malice and without probable cause . . . for the purpose of denying me equal protection, and my First, Fifth, Eighth and Fourteenth Amendment rights . . . [and] [b]y subjecting me to Double-Jeopardy . . . denying court access.").  Nonetheless, the court has summarized the factual allegations as coherently as possible based upon the twelve distinct incidents giving rise to plaintiff's claims.

[4] Defendant's brief uses the abbreviation "CR" rather than "ECF" to refer to the docket entry for the court's electronic filing system.

2

(2) Between August 1997 and November 1999, Castro and D. Peterson wrongfully maintained lockdown conditions at the prison.  (CR 319 ¶¶ 67, 70, 122, 124);[5]

(3) On August 12, 1997, Wright wrongfully deprived Plaintiff of some of his legal property.  (CR 319 ¶¶ 43, 72);

(4) On August 21, 1997, Wright falsely accused Plaintiff of participating in a riot in Rules Violation Report number 97-08-066, which was later dismissed. (CR 319 ¶¶ 43, 72(b), 96, 120)  Furthermore, Plaintiff contends that in 1998, Wright, Reyes, and C. Peterson wrongfully caused Rules Violation Report number 97-08-066 to be reissued, before the charge was again dismissed.  (CR 319 ¶¶ 72(c), 73(b), 89-91);

(5) On August 27, 1997, Babich violated Plaintiff's due process rights by failing to provide Plaintiff with notice of a hearing, at which Plaintiff's job assignment was changed from paid to unpaid.  (CR 319 ¶ 103);

(6) Between February 1998 and March 1999, Park failed to provide Plaintiff with dental care. (CR 319 ¶¶ 82, 102);

(7) On May 5, 1998, Reyes denied Plaintiff's request for a transfer because Plaintiff had a pending rules violation hearing.  ( CR 319 ¶¶ 73(a), 101(a));

(8) On June 1, 1998, Holmes wrongfully issued Plaintiff Rules Violation Report 98-06-009 after Plaintiff refused to permit Holmes to photograph his tattoos.  (CR 319 ¶ 74)  Furthermore, Plaintiff alleges that C. Peterson unlawfully reduced the charge from a serious rules violation to administrative matter prior to the hearing for Rules Violation Report 98-06-009, and C. Peterson excluded relevant evidence during the rules violation hearing.  (CR 319 ¶¶ . . . 71, 93 . . . 111, 112)  Plaintiff contends that D. Peterson conspired with C. Peterson to affect the outcome of Plaintiff's rules violation hearing, and Castro and Jennings learned of Plaintiff's allegations though the administrative grievances process.  (CR 319 ¶¶ . . . [70,] 71, 93 . . . 111, 112);[6]

/////

/////

/////

/////

---

[5] Plaintiff alleges he was subjected to the lockdown conditions until December 8, 1999, when he "departed HDSP C-facility."  ECF No. 319 ¶ 70.

[6] Defendants' citations to paragraphs 7 and 100, which appear to be unrelated to the allegations in paragraph 8, are omitted here.  *See* ECF No. 319 ¶¶ 7, 100.

1    (9) On January 5, 1999, Babich, Baughman, and Diggs wrongfully failed
to reduce Plaintiff's classification score. (CR 319 ¶ 66) On January 28, 1999,

2    Reyes retaliated against Plaintiff by wrongfully raising his classification score by
twelve points. (CR 319 ¶¶ 64, 73(d), 101(b)) Plaintiff claims that Runnels and

3    Jennings learned of Plaintiff's allegations against Reyes though the administrative
grievances process. (CR 319 ¶¶ [101[7]](b), 111, 112);[[8]]

4

5    (10) On February 1, 1999, inmate-Garcia gave Reyes some of Plaintiff's
legal documents, and Reyes wrongfully refused to return the property to Garcia.

6    (CR 319 ¶ 46);

7    (11) On February 25, 1999, Haas falsely identified Plaintiff as a "shot
caller." (CR 319 ¶ 47);

8    (12) On March 16, 1999, McClure, Diggs, Wright, and South-Gilliam
retaliated against Plaintiff by unlawfully placing him on C-status. (CR 319 ¶¶

9    43(f), 72(d), 75, 76(c), 77(c), 78(c), 79, 97, 105, 107, 108).[[9]]

10   ECF No. 352 at 4-5.

11   Defendants move to dismiss the complaint for failure to state a claim and for failure to

12   exhaust administrative remedies pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6)

13   and 12(b).  ECF No. 352.

14   **II.    Rule 12(b)(6) Standards**

15   To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

16   must contain more than a "formulaic recitation of the elements of a cause of action"; it must

17   contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell*

18

19   [7] Defendants cited to paragraphs 83(b), 111, and 112 as the sources for plaintiff's allegation
that Runnels and Jennings learned of plaintiff's allegations against Reyes through the administrative

20   grievance process.  However, paragraph 83 is not relevant to those allegations.  Rather, it is
paragraphs 101(b), 111 and 112, wherein plaintiff alleges that on May 29, 1999, Jennings and

21   Runnels "rubber-stamped" Reyes' decision to lower plaintiff's score, and that their decision was
"overturned only after [the] appeal went beyond HDSP," to the Director's Level of review.

22   [8] Additional allegations apparently relating to paragraph 9 can be found in paragraphs 43(d),
44, 49, 51, 52, 77(a)-(b), 78(b), 103(c), and 106 of the second amended complaint.  *See* ECF No.

23   319.  Liberally construed, these allegations also support a retaliation claim against defendants
Babich, Baughman and Diggs based upon their alleged failure to reduce plaintiff's classification

24   score on January 5, 1999.

25   [9] The incident described in paragraph 12 also encompasses plaintiff's allegations that on May
4, 1999, defendants Jennings and Runnels violated plaintiff's right to due process by approving the

26   C-status placement.  ECF No. 319 ¶¶ 111-112.

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more

. . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of

action."  *Id.* (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-

236 (3d ed. 2004)).  "[A] complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

(quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Id.*  Dismissal is appropriate based either on the lack of cognizable

legal theories or the lack of pleading sufficient facts to support cognizable legal theories.

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

        In considering a motion to dismiss, the court must accept as true the allegations of the

complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe

the pleading in the light most favorable to the party opposing the motion, and resolve all doubts

in the pleader's favor.  *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869

(1969).  The court will "'presume that general allegations embrace those specific facts that are

necessary to support the claim.'"  *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256

(1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  The court may

consider facts established by exhibits attached to the complaint.  *Durning v. First Boston Corp.*,

815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also consider facts which may be judicially

noticed, *Mullis v. U.S. Bankr. Ct.*, 828 F.2d at 1388, and matters of public record, including

pleadings, orders, and other papers filed with the court.  *Mack v. South Bay Beer Distribs.*, 798

F.2d 1279, 1282 (9th Cir. 1986).

        Pro se pleadings are held to a less stringent standard than those drafted by lawyers.

*Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir.

1985).  However, the court's liberal interpretation of a pro se litigant's pleading may not supply

essential elements of a claim that are not plead.  *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir.

1   1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

2   Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual

3   allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v.*

4   *Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). The court need not accept

5   unreasonable inferences, or unwarranted deductions of fact. *W. Mining Council v. Watt*, 643

6   F.2d 618, 624 (9th Cir. 1981). A pro se litigant is, however, entitled to notice of the deficiencies

7   in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be

8   cured by amendment. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

9   **III.    Exhaustion Under the PLRA**

10          The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought

11   with respect to prison conditions [under section 1983 of this title] until such administrative

12   remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Prison conditions" subject to

13   the exhaustion requirement have been defined broadly as "the effects of actions by government

14   officials on the lives of persons confined in prison . . . ." 18 U.S.C. § 3626(g)(2); *Smith v.*

15   *Zachary*, 255 F.3d 446, 449 (7th Cir. 2001); *see also Lawrence v. Goord*, 304 F.3d 198, 200 (2d

16   Cir. 2002). To satisfy the exhaustion requirement, a grievance must alert prison officials to the

17   claims the plaintiff has included in the complaint, but need only provide the level of detail

18   required by the grievance system itself. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v.*

19   *Nussle*, 534 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials

20   "time and opportunity to address complaints internally before allowing the initiation of a federal

21   case").

22          Prisoners who file grievances must use a form provided by the California Department of

23   Corrections and Rehabilitation, which instructs the inmate to describe the problem and outline

24   the action requested. The grievance process, as defined by California regulations, has three

25   levels of review to address an inmate's claims, subject to certain exceptions. *See* Cal. Code

26   Regs. tit. 15, § 3084.7. Administrative procedures generally are exhausted once a plaintiff has

received a "Director's Level Decision," or third level review, with respect to his issues or claims. *Id.* § 3084.1(b).

Proper exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). For a remedy to be "available," there must be the "possibility of some relief . . . ." *Booth*, 532 U.S. at 738. Relying on *Booth*, the Ninth Circuit has held:

> [A] prisoner need not press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available.

*Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

In the Ninth Circuit, motions to dismiss for failure to exhaust administrative remedies are normally brought under Rule 12(b) of the Federal Rules of Civil Procedure. *See Albino v. Baca*, 697 F.3d. 1023, 1029 (9th Cir. 2012). Nonetheless, it remains well established that credibility of witnesses over material factual disputes cannot be resolved on paper. Thus, when ruling on an exhaustion motion requires the court to look beyond the pleadings in the context of disputed issues of fact, the court must do so under "a procedure closely analogous to summary judgment." *Wyatt v. Terhune*, 315 F.3d 1108, 1119, n.14 (9th Cir. 2003). Doing so ensures that a process is followed to test whether disputes over facts pertaining to whether plaintiff actually exhausted available remedies are truly genuine and material and therefore warrant live testimony, or whether the dispute(s) may be disposed of by unrefuted declarations and exhibits. Therefore, following the suggestion in *Wyatt*, and because care must be taken not to resolve credibility on paper if it pertains to disputed issues of fact that are material to the outcome, the undersigned applies the Rule 56 standards to exhaustion motions that require consideration of materials extrinsic to the complaint.[10] *See Chatman v. Felker*, No. Civ. S-06-2912 LKK EFB, 2010 WL

---

[10] Here, defendants rely on testimonial evidence in the form of declarations from prison officials and a documentary record to establish the facts in support of their contention that plaintiff

3431806, at *2-3 (E.D. Cal. Aug. 31, 2010).

Failure to exhaust is an affirmative defense in the sense that defendants bear the burden of proving plaintiff did not exhaust available remedies. *Wyatt*, 315 F.3d at 1119. To bear this burden:

> a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process. Relevant evidence in so demonstrating would include statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case . . . . With regard to the latter category of evidence, information provided [to] the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, "available."

*Brown*, 422 F.3d at 936-37 (citations omitted).

## IV.   Discussion

Defendants argue that the claims predicated on the allegations summarized above in paragraphs 1-8, 10, and 12, should be dismissed because they are unexhausted. Defendants also argue that the claims predicated on the allegations summarized above in paragraphs 1, 3, 5, 7, 10, and portions of 4, 8, and 9 should be dismissed for failure to state a claim.[11] Before turning to defendants' arguments, the court first addresses plaintiff's general contentions that defendants' motion should be denied.

First, plaintiff contends that defendants have waived the defense of nonexhaustion by failing to timely raise it. ECF No. 355 at 24-26. To further this argument, plaintiff identifies a

---

failed to exhaust.

[11] In resolving defendants' motion to dismiss, the court considers the exhaustion issue first, as exhaustion is a prerequisite to filing suit. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted."); *see also McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam) (requiring dismissal where prisoner fails to exhaust administrative remedies before filing suit and tries to do so while case is pending). Where the court recommends dismissal of a claim without prejudice as unexhausted, it need not address defendants' alternative Rule 12(b)(6) argument.

June 10, 1999 order issued in this case which informed plaintiff that he "need not exhaust his claims for monetary damages" because "[m]onetary relief cannot be afforded through the California Department of Corrections inmate grievance procedure." ECF No. 12 at 2.  Plaintiff acknowledges that this ruling has subsequently been overruled by intervening case law clarifying that prisoners must exhaust administrative remedies even when the prisoner's suit seeks monetary damages that are unavailable through the prison's grievance process.  *See Booth v. Churner*, 532 U.S. 731, 734-35, 741 (2001).  Nevertheless, plaintiff seems to argue that the change in case law should not apply to him because, in his view, both the court and the defendants should have promptly notified him of this change because of his limited access to legal resources.  ECF No. 355 at 25.  Plaintiff cites no authority for this proposition.  Moreover, this court is bound by controlling Supreme Court precedent and there is simply no basis to conclude that defendants waived their affirmative defense of failure to exhaust.

Nor does the "law of the case" doctrine[12] entitle plaintiff to proceed in this action on unexhausted claims.  *See* ECF No. 355 at 61-62.  Plaintiff contends that because he relied on the June 10, 1999 order, referenced above, he should be permitted to proceed on all of his claims.  *Id.*  Plaintiff is mistaken.  As noted, *Booth* is controlling authority and must be applied here.  Any doubt in this regard should be put to rest by the Court of Appeals' May 26, 2009 memorandum decision issued in this case, which dismissed several of plaintiff's claims as unexhausted.[13]  *See* ECF No. 304 (citing *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (explaining that "proper exhaustion" requires adherence to administrative procedural rules) and *McKinney v.*

_____

[12] Under the law of the case doctrine, "a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case."  *United States v. Bad Marriage*, 439 F.3d 534, 538 (9th Cir. 2006).  A prior decision should be followed *unless* (1) the decision is clearly erroneous and its enforcement would work a manifest injustice; (2) *intervening controlling authority makes reconsideration appropriate*; or (3) substantially different evidence was adduced at a subsequent trial.  *Hegler v. Borg*, 50 F.3d 1472, 1475 (9th Cir. 1995).

[13] Plaintiff's request to "revive" these claims (ECF No. 355 at 83-85) must be denied.  This court cannot reverse the judgment of the Court of Appeals.

1  *Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (per curiam) (holding that exhaustion under 42

2  U.S.C. § 1997e(a) must occur prior to commencement of the action)).

3      In addition, plaintiff argues that defendants intentionally delayed raising their failure to

4  exhaust defense by initially responding to plaintiff's complaint with a motion for a more definite

5  statement.  But a motion for a more definite statement is an authorized response to a pleading,

6  *see* Fed. R. Civ. P. 12(e), and plaintiff fails to show that the motion was frivolous or improper for

7  any reason.  Plaintiff thus fails to demonstrate that by filing a Rule 12(e) motion, defendants

8  unnecessarily delayed raising the affirmative defense of failure to exhaust administrative

9  remedies, or that they otherwise waived it.

10     Plaintiff argues further that a dismissal without prejudice of his claims as unexhausted

11  will be tantamount to a dismissal with prejudice because his claims would now be barred by the

12  statute of limitations.  ECF No. 355 at 26.  Regardless of whether plaintiff will be successful in

13  bringing any dismissed claim in a new lawsuit, if he did not properly exhaust a claim, under

14  controlling case law it must be dismissed.  Plaintiff's contention that he will be prejudiced by

15  any dismissal of his claims as unexhausted is not an adequate basis for denying defendants'

16  motion.

17     Plaintiff is also adamant that defendants' motion must be denied on the grounds that their

18  evidence is incomplete, false, and unreliable.  *See Wyatt*, 315 F.3d at 1116-17, 1119-20 (an

19  incomplete record is inadequate to establish nonexhaustion).  Plaintiff points to numerous

20  discrepancies between the records provided by defendants and those he has provided with his

21  opposition.  *See, e.g.,* ECF No. 355 at 31-34 (identifying instances in which some of defendants'

22  records do not reflect receipt of plaintiff's appeals, lack certain stamps or signatures, omit some

23  of the prison's responses to plaintiff's appeals, or omit some of plaintiff's attachments).  As

24  noted, administrative appeals go through various levels of review and bounce back and forth

25  between the complaining inmate and prison officials.  Minor inconsistencies between the parties'

26  copies, without a showing as to how any particular inconsistency undermines defendants'

1   contention that plaintiff failed to exhaust, do not demonstrate that defendants' evidence is false,

2   unreliable, or incomplete for purposes of meeting the initial burden on their motion.  Where

3   plaintiff argues that a specific discrepancy or omission is significant, the court will address it

4   when discussing the claim to which it relates.

5        Lastly, plaintiff argues that defendants have failed to meet their burden of proving

6   nonexhaustion because their administrative record does not include any group appeals that

7   plaintiff may have joined in during the relevant period of time.  Plaintiff contends that to meet

8   their burden, defendants must "comb[ ] through" the files of other inmates to determine whether

9   plaintiff joined in any of their appeals.   ECF No. 355 at 35, 94 (¶ 21).  Aside from the group

10  appeal discussed below regarding the claims alleged in paragraph 2, plaintiff does not contend

11  that any particular group appeal would have satisfied the exhaustion requirement in this case.

12  Mindful that "[a] defendant's burden of establishing an inmate's failure to exhaust is very low,"

13  the court declines to require that defendants undertake such an onerous task to meet their initial

14  burden.  *See Albino*, 697 F.3d at 1031 ("A defendant need only show the existence of remedies

15  that the plaintiff did not use.").

16        The court next addresses the arguments set forth in defendants' motion to dismiss.[14]

17  **A.    Claims Alleged in Paragraph 1**

18        Paragraph 1 includes plaintiff's allegations that (1) he was deprived of his personal

19  property in January 1997 upon his arrival to High Desert State Prison, (2) in February 1997,

20  defendant Singletary filed a false declaration claiming plaintiff had received all of his property,

21  /////

22

23  [14] The court notes that defendants move to dismiss as unexhausted claims that arose between
    January 1997 and December 1999.  Under then existing regulations, plaintiff was required to file
24  a grievance within "15 working days of the event or decision being appealed." Cal. Code Regs. tit.
    15, § 3084.6(c) (1999).  Defendants' evidence shows that between January 1997 and May 1999,
25  plaintiff filed twenty grievances.  ECF No. 352, Exs. C, E-Z.  Because defendants' evidence does
    not account for grievances filed by plaintiff after May 1999, the court cannot determine whether
26  plaintiff did or did not exhaust any claims that arose after mid-May 1999.  Accordingly, it has not
    been shown that plaintiff failed to exhaust any claims arising after that time period.

11

1  and (3) that defendants Castro, D. Peterson, McClure, Diggs, Jennings, Wright, and Runnels

2  failed to properly train or supervise the unnamed staff that disposed of plaintiff's property.

3      Defendants have submitted copies of the twenty grievances pursued by plaintiff.  The

4  court has carefully reviewed each of the twenty and finds that only one of them would have

5  alerted prison officials to any of the allegations made in paragraph 1.  *See* ECF No. 352, Exs. G-

6  Z; *see also id.*, Ex. F (including a chart that briefly summarizes the issues raised in each of the

7  twenty grievances).  In grievance number 97-0817, dated February 17, 1997, plaintiff

8  complained that officials at California State Prison, Sacramento had failed to transfer all of his

9  personal property to High Desert State Prison and that officials had not followed through with

10  statements to plaintiff that his property would be returned.  ECF No. 352, Ex. G.  Defendants'

11  evidence shows that this grievance was denied at the second-level of review and returned to

12  plaintiff on September 10, 1997.  *Id.*  Their evidence also shows that plaintiff did not

13  subsequently seek Director's level review.  *Id.,* Ex. B ¶¶ 4-7, Ex. A.  Thus, defendants have

14  shown that administrative relief remained available to plaintiff for the claims alleged in

15  paragraph 1.

16      Plaintiff responds by claiming that he did, in fact, pursue appeal number 97-0817 to the

17  Director's level, that prison officials failed to timely respond to the appeal, and that defendants'

18  copy of the appeal is false and unreliable.

19      In claiming that he pursued the appeal to the Director's level, plaintiff points to the

20  appeal itself, which shows that on May 23, 1997, he filled out the section requesting Director's

21  level review.  *See* ECF No. 352, Ex. G.  Plaintiff states that when he filled this section out, the

22  appeal had already been denied at the second level.  ECF No. 355 at 57.  It is apparent from the

23  appeal, however, that it was not even assigned to the second level until May 29, 1997.  *See* ECF

24  No. 352, Ex. G (also showing that the April 1, 1997 first level response was supplemented on

25  May 6, 1997).  Had plaintiff submitted this appeal to the Director's level on May 23, 1997, as he

26  contends he did, it would have been properly rejected because review at the second level had not

1    yet begun, and was most certainly not complete. *See* Cal. Code Regs. tit. 15, § 3084.5(c) (1997).

2    Moreover, evidence that plaintiff filled out the section of the appeal requesting Director's level

3    review is not evidence that plaintiff properly filed the appeal at the Director's level.  After the

4    appeal was denied at the second level in September of 1997, plaintiff was required to seek

5    further relief.  Plaintiff failed to do so.

6       Plaintiff also argues that prison officials failed to timely respond to the appeal, and that

7    this should prevent defendants from raising the exhaustion defense.  ECF No. 355 at 56-57.  In

8    general, courts have responded to a prisoner's allegation of an untimely response to his

9    administrative appeal by examining the circumstances under which such a response ought to

10    excuse the prisoner's failure to exhaust.  The court in *Womack v. Bakewell*, No. Civ. S-09-1431

11    GEB KJM P, 2010 U.S. Dist. LEXIS 93346 (E.D. Cal. Sept. 7, 2010), discussed these

12    circumstances, including whether a tardy response should render administrative remedies

13    "unavailable."  *See Nunez v. Duncan*, 591 F.3d 1217, 1224, 1226 (9th Cir. 2010) (failure to

14    exhaust may be excused where "circumstances render administrative remedies effectively

15    unavailable").

16      The Ninth Circuit has not determined that an untimely response by prison appeals
administrators provides a blanket excuse for a prisoner's failure to exhaust, but it

17      has left open the possibility that unjustified delay in responding to a grievance,
"particularly a time-sensitive one, may demonstrate that no administrative process

18      is in fact available."  *Brown*, 422 F.3d at 943 n.18.  As a general matter, a prison
officials' failure to abide by regulations governing the appeals process can render

19      the process unavailable for purposes of exhaustion.  *See Nunez v. Duncan*, 591
F.3d 1217, 1224 (9th Cir. 2010).  Other judges of this court have relied on *Nunez*

20      and precedent from other circuits in finding that prison officials' failure to process
appeals within the time limits prescribed by prison regulations renders an appeals

21      process unavailable.  *See, e.g., Nible v. Knowles*, 2010 U.S. Dist. LEXIS 83752,
2010 WL 3245325 at *3 (E.D. Cal.) (citing, inter alia, *Boyd v. Corrections Corp.*

22      *of America*, 380 F.3d 989, 996 (6th Cir. 2004) (administrative remedies are
exhausted when prison officials fail to timely respond to properly filed

23      grievance), *adopted by* 2009 U.S. Dist. LEXIS 49490, 2009 WL 1658043 (E.D.
Cal.)); *see also Abney v. McGinnis*, 380 F.3d 663, 667 (2nd Cir. 2004) (failure of

24      prison officials to timely advance appeal may justify failure to exhaust); *Jernigan*
*v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (failure to grievance

25      within policy time limits renders remedy unavailable); *Powe v. Ennis*, 177 F.3d
393, 394 (5th Cir. 1999) (when a valid grievance has been filed and the state's

26      time to respond has expired, the remedies are deemed exhausted).

The circuits that have addressed the issue appear uniform in their acceptance of the proposition that untimely responses from prison officials may render the process unavailable for purposes of exhaustion under the PLRA. In the cases in which failure to exhaust actually was excused, however, the inmate never received any response from prison appeals officials before he filed suit, *see Nible, Boyd* and *Powe, supra*, or he had been "mired in a Catch-22" of repeatedly winning the same relief only to watch officials fail to implement it, leaving him no administrative recourse but to file the same grievance again. *See Abney*, 380 F.3d at 669 (finding "defendants' failure to implement the multiple rulings in Abney's favor rendered administrative relief 'unavailable' under the PLRA").

The Seventh Circuit has articulated the reasoning for concern about prison officials' failure to respond, even in finding, in a given case, the grievance process remained available: "[w]e refuse to interpret the PLRA 'so narrowly as to ... permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.'" *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (citations omitted).  This concern is amplified when "[d]elay in responding to a grievance, particularly a time-sensitive one, may demonstrate that no administrative process is in fact available." *Brown*, 422 F.3d at 943 n.18. In this case, plaintiff's request for additional pain medication for a condition that required surgery is not, on its face, a trivial one. Still, the cases show the remedy must be "unavailable" as a matter of fact.  Prison officials' failure to meet deadlines for responding to an appeal does not render the inmate's remedies unavailable per se; rather how the process actually unfolds in a particular case is critical to the analysis. For example, the Tenth Circuit in *Jernigan* cited the general rule that untimely responses may excuse failure to exhaust but found against the plaintiff because he was advised he had ten days in which to seek a response from the tardy authority. *See Jernigan*, 304 F.3d at 1032-33. The court also noted that prison policy allowed inmates who claimed they had never received a response to send the grievance with evidence of its prior submission to an administrative review authority, and the inmate had not availed himself of that further review. Id. at 1033.

In *Ellis v. Cambra*, 2005 U.S. Dist. LEXIS 37346, 2005 WL 2105039 (E.D.Cal.), plaintiff argued that exhaustion was unavailable because he had never received a response at the informal level. However, the court rejected that argument because plaintiff was notified before he filed suit that even though there was no record of his informal appeal, he could still proceed to the first formal level. "Thus, prior to the time plaintiff filed this suit, an avenue of administrative relief remained available to him." 2005 U.S. Dist. LEXIS 37346, [WL] at *5. The court cited to many of the same cases listed above but said, in the end, "[t]he issue becomes one of determining at what point prison officials have sufficiently thwarted the process so as to render it unavailable." 2005 U.S. Dist. LEXIS 37346, [WL] at *4.

Here, the court finds *Ellis* strikes the proper balance between prison officials' undisputed failure to follow state regulations and the actual "unavailability" of the remedial process on the facts of this case. In plaintiff's case, the delay may have signaled an indifference to his condition that might excuse exhaustion under other circumstances, but it did not amount to obstruction of the process to the point it actually became unavailable. Nothing in the record suggests plaintiff could not have proceeded through the next two levels of appeal after he received the

14

1   response on March 6, regardless of the tardiness of the response. FN2. Nothing in
2   the record explains why plaintiff did nothing with respect to his claim for the
3   two-and-a-half months between March 6 and May 18, when he filed this lawsuit.
    Had he pursued his grievance all the way to the end, his second and third level
4   responses would have taken at most (assuming timely responses) another twenty
    and sixty working days, respectively. *See* CCR tit. 15, § 3084.6(b)(3), (4). That
5   timing would have delayed either an increase in medication or the filing of this
    lawsuit, but, again, in this case delay did not amount to outright obstruction. "[I]f
6   there is a process available, it must be utilized, regardless of how tiresome or
    trying." *Elli*s, 2005 U.S. Dist. LEXIS 37346, [WL] at *5. By pointing to relevant
7   documents that show process was still available to plaintiff, defendant Bakewell
    has met her burden.

8         FN2. It is worth repeating that on March 6 plaintiff also received a
          response to Appeal SAC-10-09-10305 and chose not to pursue it to the
9         next appellate level.

10  *Womack*, 2010 U.S. Dist. LEXIS 93346, at *10-15. Plaintiff claims he submitted his appeal to

11  the second level on April 23, 1997, and that prison officials failed to respond within 20 working

12  days as required. It is undisputed that prison officials responded at the second level by

13  September 10, 1997, over four months after plaintiff claims to have submitted it, but over one

14  year before plaintiff commenced this action. *See* ECF No. 1 (original complaint, filed Oct. 28,

15  1998). Unlike the cases discussed in *Womack*, plaintiff actually received a response to his

16  appeal, and further administrative relief was available to him for many months prior to

17  commencing this action. The fact that prison officials may have missed the deadline to respond

18  to plaintiff's appeal does render plaintiff's administrative remedies "unavailable per se."

19  *Womack*, 2010 U.S. Dist. LEXIS 93346, at *13; *see also Rice v. Milson*, 2010 U.S. Dist. LEXIS

20  127427, at *7-8 (C.D. Cal. Oct. 15, 2010) (rejecting plaintiff's claim that he "constructively

21  exhausted" when he failed to pursue further relief after an "unfortunate but unintended delay in

22  receiving the second-level appeal ruling" on his appeal).

23         Plaintiff also claims that the administrative record for grievance number 97-0817 is false

24  and unreliable because two of the dates appearing on the grievance have been crossed out and

25  replaced with later dates. ECF No. 355 at 56-57. The dates refer to when the grievance was

26  assigned to the second level of review, and when the second level response was due to plaintiff.

1  For reasons that are not clear from the record, it appears that the grievance was initially assigned

2  to the second level of review on May 29, 1997.  That date was later changed to August 18, 1997.

3  In addition, it appears that the second level response was initially due to plaintiff by June 16,

4  1997, but was later extended to September 16, 1997.  *See* ECF No. 352, Ex. G.  Plaintiff does not

5  contend that these dates bear on whether he properly pursued all available remedies for the

6  appeal or whether he should be excused from the exhaustion requirement.  Instead, he argues

7  that the changed dates demonstrate that defendants' evidence is "falsified" and "unreliable."

8  ECF No. 355 at 57.  However, the changed dates suggest that there may have been delays in

9  processing the grievance, that responses at various levels of review may have been modified or

10  supplemented, or that other administrative reasons caused certain deadlines to be extended.

11  Nothing about the changed dates suggests that defendants' copy of the grievance is falsified or

12  otherwise unreliable.

13  Plaintiff has not demonstrated that he satisfied the pre-filing exhaustion requirement for

14  the allegations in paragraph 1.  Nor has he shown that additional administrative remedies were

15  unavailable following receipt of the second level response to his appeal in September 1997.

16  Accordingly, claims based on the allegations in paragraph 1 must be dismissed without prejudice

17  as unexhausted.

18  **B.    <u>Claims Alleged in Paragraph 2</u>**

19  Paragraph 2 includes plaintiff's allegations that between August 1997 and December

20  1999, defendants Castro and D. Peterson wrongfully maintained lockdown conditions.  *See* ECF

21  No. 319, ¶¶ 67, 70, 122, 124.

22  The court has carefully reviewed each of plaintiff's grievances and finds that none of

23  them would have alerted prison officials to the claims raised in paragraph 2.  *See* ECF No. 352,

24  Exs. G-Z; *see also id.*, Ex. F (including a chart that briefly summarizes the issues raised in each

25  of the twenty grievances).  Defendants' evidence shows that plaintiff had not exhausted the

26  claims raised by paragraph 2 at the time he filed his amended complaint on May 11, 1999.  *See*

16

1  ECF No. 10 (dated May 7, 1999) ¶ 146 (alleging that "since August 12, 1997," prison officials at

2  High Desert State Prison had kept plaintiff on lockdown); *see also McKinney*, 311 F.3d at

3  1199-1201 and *Rhodes v. Robinson*, 621 F.3d 1002, 1004-07 (9th Cir. 2010) (together holding

4  that claims must be exhausted prior to the filing of the original or supplemental complaint).

5       As noted, defendants' evidence regarding plaintiff's administrative grievance history

6  does not extend past May 1999.  Defendants concede that for this reason, they have not carried

7  their burden of proving the absence of exhaustion for the wrongful imposition of a lockdown

8  between May 7, 1999 and December 8, 1999.  ECF No. 358 at 12.  Therefore, this portion of

9  plaintiff's claim survives defendants' motion to dismiss.

10      Plaintiff contends that defendants have also failed to carry their burden for the portion of

11  his claim regarding the lockdown from August 1997 and May 6, 1999.  Plaintiff contends that he

12  joined a group appeal that was filed by inmate Frank Garcia on March 18, 1999.  ECF No. 355 at

13  42-43, 94 (¶ 21), Ex. 7.  Defendants argue that the substance of the group appeal would not have

14  put prison officials on notice of plaintiff's claim that the prison maintained a lockdown without

15  good cause.  *See Jones*, 549 U.S. at 204 (explaining that the PLRA's exhaustion requirement is

16  intended to give "prison officials an opportunity to resolve disputes concerning the exercise of

17  their responsibilities before being haled into court.").  The group appeal complained that the

18  prison had changed it policies to (1) deny or delay delivery of packages, (2) cause non-

19  aggressors to be placed in administrative segregation, and (3) wrongfully classify inmates and

20  discriminate against inmates with a "C-status" designation.  *See* ECF No. 355, Ex. 7 (explaining

21  that inmates are assigned C-status if they refuse to work).  While the appeal notes that the prison

22  had been on lockdown since August of 1997, it did not complain that the lockdown had been

23  wrongfully imposed or request that the lockdown be lifted.  *See id.* (requesting that packages be

24  provided, that documents relating to C-status be expunged from inmate files, and that canteen

25  and yard be allowed during C-status placement).  Thus, the group appeal would not have put

26  prison officials on notice of plaintiff's claim that defendants Castro and D. Peterson had

wrongfully maintained a lockdown since August of 1997.  *See Sapp v. Kimbrell*, 623 F.3d 813,

824 (9th Cir. 2010) (grievance does not suffice to exhaust a claim if it does not put the prison on

adequate notice of the problem for which the prisoner seeks redress).  Therefore, claims based on

the lockdown prior to May 7, 1999, must be dismissed as unexhausted.

### C.   Claims Alleged in Paragraph 3

Paragraph 3 includes plaintiff's allegation that on August 12, 1997, defendant Wright

wrongfully deprived plaintiff of his legal property.  According to plaintiff, Wright saw plaintiff

"almost daily," and plaintiff was recognized as a "jailhouse lawyer" who always carried a fishnet

laundry bag holding legal envelopes, and was known for assisting other inmates draft grievances.

ECF No. 319 ¶¶ 40, 42-43.  Plaintiff alleges that despite his warning to Wright that he had

important legal materials in his laundry bag, Wright allowed other inmates "to pillage and

plunder" plaintiff's property, without any penological justification.  *Id.* ¶¶ 43, 72.  Plaintiff

claims this resulted in the loss of important legal research and other property.  *Id.*

In their reply, defendants withdraw their argument to dismiss this claim as unexhausted.

ECF No. 358 at 13.  They also concede that the allegations are sufficient to state a retaliation

claim under the First Amendment.  *Id.*  However, defendants maintain that the allegations fail to

state a cognizable due process claim.  ECF No. 352 at 15, 18.

Where a prisoner alleges the deprivation of a liberty or property interest in violation of

the Fourteenth Amendment, caused by the unauthorized negligent or intentional action of a

prison official, the prisoner cannot state a constitutional due process claim where the state

provides an adequate post-deprivation remedy.  *See, e.g., Hudson v. Palmer*, 468 U.S. 517, 533

(1984).  California provides such a remedy for prisoners.  *See Barnett v. Centoni*, 31 F.3d 813,

816-17 (9th Cir. 1994) (per curiam) (citing California Government Code §§ 810-895).  Thus,

plaintiff's allegation regarding Wright's unauthorized deprivation of his property fails to state a

cognizable due process claim.

/////

1    Nor are the allegations sufficient to establish a sufficiently serious violation for purposes

2    of the Eighth Amendment, which protects prisoners from inhumane methods of punishment and

3    from inhumane conditions of confinement.  *See Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th

4    Cir. 2006); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("only those deprivations denying the

5    minimal civilized measure of life's necessities are sufficiently grave to form the basis of an

6    Eighth Amendment violation").

7    To the extent plaintiff contends that his allegations should be construed as an access to

8    court claim, the claim lacks merit.  *See* ECF No. 355 at 74-75 (arguing that "inmates are entitled

9    access to the tools required to litigate").  Prisoners have a constitutional right of access to the

10    courts.  *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  Prisoners also have a right "to litigate

11    claims challenging their sentences or the conditions of their confinement to conclusion without

12    *active interference* by prison officials." *Silva v. Di Vittorio*, 658 F.3d 1090, 1103 (9th Cir. 2011).

13    An inmate alleging a violation of this right must show that he suffered an actual injury.  *Lewis v.

14    Casey*, 518 U.S. 343, 349-51 (1996). That is, plaintiff must allege that the deprivation actually

15    injured or impaired his litigation efforts, in that the defendant hindered his efforts to bring, or

16    caused him to lose, an actionable claim challenging his criminal sentence or conditions of

17    confinement.  *See id.* at 351; *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002).  As

18    defendants point out, a plaintiff does not state an access to court claim merely because an alleged

19    property deprivation included legal property.  While plaintiff claims that he was deprived of

20    legal property, his second amended complaint does not allege that he was prevented from

21    accessing the court or that he suffered any cognizable injury because of Wright's conduct.  *See*

22    ECF No. 319 ¶¶ 43, 72.  Plaintiff, who was previously notified of the requirements for alleging a

23    violation of a Constitutional right, *see* ECF No. 306, does not state an access to court claim in his

24    second amended complaint.

25    /////

26    /////

19

1    As for the allegations in paragraph 3, therefore, this action should proceed only on the

2    First Amendment retaliation claim, and the other purported claims must be dismissed with

3    prejudice.

4    **D.    Claims Alleged in Paragraph 4**

5    Paragraph 4 includes plaintiff's allegations that on August 21, 1997, Wright retaliated

6    against plaintiff by falsely accusing him of participating in a riot in Rules Violation Report

7    number 97-08-066, and that in 1998, Wright, Reyes, and C. Peterson wrongfully caused Rules

8    Violation Report number 97-08-066 to be reissued.  ECF No. 319 ¶¶ 43, 58, 72(b)(c), 73(b), 89-

9    91, 96, 120.

10   In their reply brief, defendants withdraw their argument to dismiss the claim based on

11   Wright's alleged retaliatory conduct on August 21, 1997.  ECF No. 358 at 14.  As for the claim

12   that Wright, Reyes, and C. Peterson wrongfully caused the rules violation report to be reissued,

13   however, defendants maintain that plaintiff failed to exhaust.  *Id.* at 14-15.

14   Defendants' evidence includes a copy of grievance number 98-1662, in which plaintiff

15   complained about C. Peterson's re-issuance of the Rule Violation Report.  ECF No. 352, Ex. R

16   (dated August 8, 1998).[15]   This appeal, however, was not denied at the Director's level until

17   August 27, 1999, well after plaintiff first presented the court with these allegations in the original

18   complaint on October 28, 1998, *see, e.g.,* ECF No. 1 ¶¶ 22, 26-27, and in the first amended

19   complaint on May 11, 1999, *see, e.g.,* ECF No. 10 ¶¶ 92-95.  *See* ECF No. 352, Ex. R,  Ex. B

20   ¶¶ 4-7, Ex. A.[16]

21

22   [15] None of the other nineteen grievances submitted by defendants would have alerted prison
     officials to any of the allegations made in paragraph 4.  *See* ECF No. 352, Exs. G-Z; *see also id.*, Ex.
23   F (including a chart that briefly summarizes the issues raised in each of the twenty grievances).

24   [16] Plaintiff's contention that administrative remedies for appeal number 98-1662, should be
     "deemed exhausted" because  prison officials did not timely respond after he submitted it on August
25   8, 1998, *see* ECF No. 355 at 47, lacks merit because plaintiff fails to show that any late response
     rendered further administrative review "unavailable as a matter of fact," as discussed in *Womack*.
26   Moreover, the court notes that the appeal, while dated August 8, 1998 by plaintiff, was not received
     by the appeals department until September 24, 1998.  *See* ECF No. 352, Ex. R.  It bypassed the

In *Rhodes v. Robinson*, 621 F.3d 1002, 1004-07 (9th Cir. 2010) the Ninth Circuit clarified that the rule of *Vaden* and *McKinney* does not apply to new claims raised in a supplemental complaint regarding conduct that occurred after the initial complaint was filed.[17] This case, however does not presents such a scenario.  In *Rhodes*, the claims that were not exhausted at the time of the first complaint were premised entirely on conduct occurring *after* that complaint's filing.  The court in *Rhodes* explained that an amended complaint supercedes the original, rendering its filing date irrelevant.  Here, however:

> unlike *Rhodes*, in which the amended complaint was actually a supplemental complaint under Federal Rule of Civil Procedure 15(d), the amended complaint in this case is not a supplemental complaint, because it raises only claims already raised in the initial complaint. Under Rule 15(c)(1)(B), such an amended complaint relates back to date of the original complaint."

*Jones v. Felker*, 2011 U.S. Dist. LEXIS 13730, 2011 WL 53755 *5 (E.D. Cal. Feb. 11, 2011). Plaintiff's repetition in the second amended complaint of claims that were not exhausted when he filed his previous complaints, does not convert those unexhausted claims into properly exhausted claims, even if they were subsequently addressed at the Director's level of review. *See McKinney*, 311 F.3d at 1199-1201 and *Rhodes*, 621 F.3d 1002, 1004-07 (9th Cir. 2010) (together holding that claims must be exhausted *prior* to the filing of the original or

---

lower levels of review and was assigned to the second level on September 25, 1998. *Id.* The second level response was not due until November 9, 1998. *See* Cal. Code Regs. tit. 15, § 3084.6(b)(3) (1998) ("Second level responses shall be completed within . . . 30 working days if first level is waived").  Plaintiff prematurely raised this claim in his October 28, 1998 complaint. *See* ECF No. 1 ¶¶ 22, 26-27.  Thereafter, plaintiff timely received the second level response, dated November 4, 1998.  *See* ECF No. 352, Ex. R.

[17] *See Rhodes*, 621 F.3d at 1004-05 ("*McKinney* held that the PLRA's exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims, even if the prisoner exhausts his administrative remedies while his case is pending. *See* 311 F.3d at 1199. *Vaden* held that a prisoner must exhaust his administrative remedies before he tenders his complaint to the district court. *See* 449 F.3d at 1050. *Vaden* also held that the claims which are exhausted after the complaint has been tendered to the district court, but before the district court grants him permission to proceed in forma pauperis and files his complaint, must be dismissed pursuant to § 1997e. *See id.* at 1050-51. Together, these cases stand for the proposition that a prisoner must exhaust his administrative remedies for the claims contained within his complaint before that complaint is tendered to the district court.").

supplemental complaint). Defendants' evidence thus shows that plaintiff failed to properly

exhaust administrative remedies for the claim regarding re-issuance of the rules violation report.

In opposition, plaintiff contends that he recently located an unprocessed appeal that he

submitted on May 15, 1998, regarding re-issuance of the rules violation report. ECF No. 355 at

46, 95 (¶ 24), Ex. 8. According to plaintiff, prison officials never responded to it. *Id.* This fact,

however, is immaterial in light of plaintiff's successful filing of the August 8, 1998 appeal.

Assuming that plaintiff previously submitted an appeal on May 15, 1998, but never received a

response, the fact remains that the August 8, 1998 appeal was processed. Plaintiff has not shown

that his pursuit of the August 8, 1998 appeal was "thwarted" or that his remedies were otherwise

made unavailable. *See Sapp*, 623 F.3d at 823-24. In addition, there is no indication from

plaintiff's copy of the May 18, 1998 grievance that it was ever received for administrative

review. *See* ECF No. 355, Ex. 8 (containing plaintiff's writing only, and showing no time

stamps or other signs of receipt). Plaintiff's mere production of this grievance, without more, is

not sufficient to either satisfy or excuse him from the exhaustion requirement. Accordingly, the

claim that Wright, Reyes, and C. Peterson wrongfully caused Rules Violation Report number

97-08-066 to be reissued, must be dismissed without prejudice as unexhausted.

### E.   Claims Alleged in Paragraph 5

Paragraph 5 includes the allegations that on August 27, 1997, defendant Babich violated

plaintiff's due process rights by failing to provide plaintiff with notice of a hearing, at which

plaintiff's job assignment was changed from paid to unpaid. ECF No. 319 ¶ 103. Again, the

undersigned has carefully reviewed each of plaintiff's grievances and finds that none of them

would have alerted prison officials to the claims raised in paragraph 5. *See* ECF No. 352, Exs.

G-Z; *see also id.*, Ex. F (including a chart that briefly summarizes the issues raised in each of the

twenty grievances). Plaintiff's bare assertion that "he filed an appeal regarding the matter," is

not supported by the record, and is not sufficient to demonstrate that he either satisfied or should

/////

1  be excused from the exhaustion requirement.  *See* ECF No. 355 at 48, 96 (¶ 26).  Accordingly,

2  this unexhausted claim must be dismissed without prejudice.

3       **F.    Claims Alleged in Paragraph 6**

4       Paragraph 6 includes the allegation that between February 1998 and March 1999,

5  defendant Park failed to provide plaintiff with dental care.  ECF No. 319 ¶¶ 82, 102.  Careful

6  review of each of plaintiff's grievances likewise shows that none of them would have alerted

7  prison officials to the claims raised in paragraph 6.  *See* ECF No. 352, Exs. G-Z; *see also id.*, Ex.

8  F (including a chart that briefly summarizes the issues raised in each of the twenty grievances).

9       In opposition, plaintiff argues that his claim against Park should be deemed exhausted

10  because administrative remedies became "effectively unavailable" with respect to an appeal he

11  filed on September 11, 1997.  ECF No. 355 at 49, 89 (¶ 8), Ex. 2.  Despite several stamps

12  showing that the appeal had been "received" for administrative review on several different dates,

13  the appeal does not bear a log number, which shows that plaintiff never properly filed it at any

14  level of review.[18]  *See id.*, Ex. 2; *see also* ECF No. 355, Ex. C (Wagner Decl.) (former HDSP

15  Appeals Coordinator, stating that appeals are assigned a log number when they are accepted for

16  review).  According to plaintiff, the appeal was repeatedly returned to him without justification.

17  *See* ECF No. 355 at 89 (¶ 8), Ex. 2 (plaintiff's attachment to appeal, stating that "the director's

18

19       [18] Plaintiff argues that defendants' evidence (specifically, the Wagner and Grannis
declarations) is false, inaccurate, and unreliable because it makes no mention of this appeal, but

20  claims to account for all appeals submitted by plaintiff, even if rejected.  ECF No. 355 at 29-31, 49-
50, 89 (¶ 8).

21       The Wagner declaration states that even appeals that were screened out would be entered into
the prison's tracking system. ECF No. 353, Ex. C ¶ 2.  With his declaration, Wagner submits reports

22  from the tracking system, which show that plaintiff filed twenty appeals between January 1, 1997
and May 1999.  *Id.* ¶ 5, Exs. G-Z.  Plaintiff is correct that his September 11, 1997 appeal, discussed

23  above, is not included among the appeals that Wagner found through the prison's tracking system.
However, the court will not make an adverse credibility finding against Wagner on this basis.  For

24  an unknown reason, the appeal may not have been entered into the tracking system sixteen years
ago.  There are no grounds for inferring that Wagner deliberately excluded this appeal from his

25  reports.  As for the Grannis declaration, the court notes that Grannis did not purport to account for
appeals submitted, but rejected, by the Inmate Appeals Branch, prior to 2000.  *See* ECF No. 355, Ex.

26  B ¶ 5, Ex. A at MTD-004 (listing appeals received but rejected between the years of 2000 and 2004).
Thus, there is also no basis for viewing the Grannis declaration as untrustworthy.

1   level refused to reply . . . because I had not exhausted HDSP's Departmental levels").  While

2   improper screening of an appeal may render administrative remedies "effectively unavailable"

3   such that exhaustion is not required, evidence of improper screening requires a showing that the

4   appeal was screened "for reasons inconsistent with or unsupported by applicable regulations."

5   *Sapp*, 623 F.3d at 823.  Despite plaintiff's belief that the repeated rejections of his appeal were

6   improper, he does not show why the reasons for rejection were not supported by applicable

7   regulations.  *See Woodford*, 548 U.S. at 90-91 ("proper exhaustion" requires adherence to

8   administrative procedural rules).  The court is cognizant that it is the defendants, not plaintiff,

9   who bear the burden of proof on the question of exhaustion.  *Jones v. Bock*, 549 U.S. at 216;

10  *Wyatt*, 315 F.3d at 1119.  Defendants have met that burden by submitting the grievances that

11  plaintiff filed together with the associated documentation regarding the processing of those

12  grievances.  While plaintiff disputes the interpretation of the "received" stamps and the absence

13  of a log number, and insists that the screening of appeals rendered his claims unexhausted, he

14  has not raised a genuine issue of material fact as to the authenticity of the documents produced

15  by defendants nor has he presented evidence showing that his appeal was screened for "for

16  reasons inconsistent with or unsupported by applicable regulations."  *Sapp*, 623 F.3d at 823.

17       Accordingly, this claim is unexhausted and must be dismissed without prejudice.

18       **G.    Claims Alleged in Paragraph 7**

19       Paragraph 7 includes the allegations that on May 5, 1998, defendant Reyes denied

20  plaintiff's request for a transfer because plaintiff had a pending rules violation hearing.  ECF No.

21  319 ¶¶ 73(a), 101(a).  Once more, the undersigned has carefully reviewed each of plaintiff's

22  grievances and finds that none of them would have alerted prison officials to the claims raised in

23  paragraph 7.  *See* ECF No. 352, Exs. G-Z; *see also id.*, Ex. F (including a chart that briefly

24  summarizes the issues raised in each of the twenty grievances).

25       Plaintiff contends that administrative remedies for this claim were unavailable, again

26  pointing to the grievance that he completed on May 15, 1998.  ECF No. 255 at 51, Ex. 8.

24

1   Plaintiff attests that "more than 14 years have lapsed and prison officials have failed to respond

2   to my appeal." *Id.* at 95 (¶ 24).  As noted, an inmate's failure to exhaust may be excused where

3   "circumstances render administrative remedies effectively unavailable." *See Nunez*, 591 F.3d at

4   1224, 1226 (finding that the plaintiff was excused from exhausting administrative remedies

5   where he took "reasonable steps" to exhaust his claim, but was precluded from exhausting

6   because of a mistake made by the warden).  Plaintiff does not claim to have taken any further

7   action with respect to this appeal, or otherwise demonstrate that he made "every effort to make

8   full use of the prison grievance process" for this appeal.  *See Nunez*, 591 F.3d at 1226.

9   Plaintiff's mere production of this unprocessed grievance, without more, cannot excuse him from

10  the exhaustion requirement.  *See Godoy v. Wadsworth*, No. CV 05-02913 NJV, 2010 U.S. Dist.

11  LEXIS 5836, at *17 (N.D. Cal. Jan. 26, 2010)  ("The record is not sufficient to excuse

12  exhaustion where Plaintiff hasn't shown that administrative procedures were unavailable, that

13  prison officials obstructed his attempt to exhaust or that he was prevented from exhausting

14  because procedures for processing grievances weren't followed.") (internal quotation marks

15  omitted); *Davis v. Evans*, Case No. C 05-4678 JF (PR), 2008 U.S. Dist. LEXIS 108352, at *4

16  (N.D. Cal. Mar. 25, 2008) (no exhaustion where "Plaintiff admits that after receiving no

17  response from his initial documentation and letter . . . for five months, he simply filed the instant

18  complaint. It is clear at the very least that Plaintiff has not pursued his appeal through the

19  director's level of review.").

20          Accordingly, this claim must also be dismissed without prejudice as unexhausted.

21          **H.      Claims Alleged in Paragraph 8**

22          Paragraph 8 includes plaintiff's allegations that in June 1998, Rule Violation Report 98-

23  06-009 was wrongfully issued, and that plaintiff received an unfair hearing.  ECF No. 319

24  ¶¶ 70-71, 74, 93, 111, 112.  In grievance number 98-1273, dated July 21, 1998, plaintiff appealed

25  the related finding of guilt.  ECF No. 352, Ex. P.  Defendants' evidence shows that this

26  /////

1  grievance was denied at the second-level of review on September 9, 1998, and that plaintiff did

2  not seek Director's level review.  *Id.*, Ex. P, Ex. B ¶¶ 4-7, Ex. A.

3         Plaintiff contends that Exhibit P, on which defendants' rely, is an incomplete copy of

4  grievance number 98-1273, because it includes only page one of the two-page September 9,

5  1998 response to plaintiff's appeal at the second level.  ECF No. 355 at 22.  Plaintiff submits a

6  copy of the second page, which informed plaintiff that "[a] second level review shall constitute

7  the department's *final action* of appeals of disciplinary actions classified as 'administrative.'"  *Id.*

8  at 22, 97 (¶ 31), Ex. 11 (emphasis added).   Plaintiff argues that by receiving this response, he

9  fulfilled his duty to exhaust.  *Id.*  Plaintiff also cites to then existing CDCR regulation

10  § 3084.7(b)(1), which stated that as an exception to the regular appeals process, "[a] second level

11  review shall constitute the department's final action on appeals of disciplinary actions classified

12  as [Administrative Rule Violations]."[19]  Thus, it appears that upon receiving the second level

13  response to grievance number 98-1273, plaintiff was neither required, nor permitted, to seek

14  further administrative review.  Defendants' motion to dismiss this claim as unexhausted must

15  therefore be denied.

16         Defendants also contend that the allegations in paragraph 8 fail to state a claim against

17  defendants Castro, Jennings, and D. Peterson.[20]  ECF No. 353 at 18-20.  The complaint alleges

18  that C. Peterson wrongfully excluded relevant evidence during a rules violation hearing, and that

19  Runnels and Jennings failed to address plaintiff's allegations against C. Peterson through the

20  administrative grievance process.  The complaint also alleges that D. Peterson, a captain,

21  /////

22

23         [19] Section 3084.7 has since been amended.  *See* Cal. Code Regs. tit. 15, § 3084.7 (2011).

24         [20] Defendants do not argue that the allegations fail to state a claim against defendants

25  Holmes, C. Peterson, or Runnels.  *See* ECF No. 352 at 29.  The court notes that plaintiff's complaint is  difficult to decipher, and although defendants did not expressly seek dismissal of claim eight as

26  against Runnels, the court recommends dismissal based upon its inherent authority pursuant to 28 U.S.C. § 1915A.

1    "instructed" C. Peterson, a lieutenant, to "find [plaintiff] guilty" of the charge for reasons

2    unrelated to plaintiff's culpability.  ECF No. 319 ¶¶ 70-71, § III.

3         According to plaintiff, his claims against Runnels and Jennings should proceed because

4    his administrative appeal made them aware of his due process claim against C. Peterson, yet they

5    denied his appeal, thereby "exten[ding]" the violation.  ECF No. 355 at 68-69.  Plaintiff further

6    contends that they denied his appeal on behalf of defendant Castro.  *Id.*  An individual defendant,

7    however, is not liable on a civil rights claim unless the facts establish the defendant's personal

8    involvement in the constitutional deprivation or a causal connection between the defendant's

9    wrongful conduct and the alleged constitutional deprivation.  *See Hansen v. Black*, 885 F.2d 642,

10   646 (9th Cir. 1989); *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978).  That is, plaintiff

11   may not sue any official on the theory that the official is liable for the unconstitutional conduct

12   of his or her subordinates.  *Iqbal*, 556 U.S. 662.  Because respondeat superior liability is

13   inapplicable to § 1983 suits, "a plaintiff must plead that each Government-official defendant,

14   through the official's own individual actions, has violated the Constitution."  *Id.*  Plaintiff may

15   not hold defendants Castro, Runnels, or Jennings liable for C. Peterson's alleged violation of

16   plaintiff's rights, as there are no allegations that any of them personally participated in that

17   violation and there is no respondeat superior liability under section 1983.  Moreover, the prison

18   grievance procedure does not confer any substantive rights upon inmates and actions in

19   reviewing and denying inmate appeals cannot serve as a basis for liability under section 1983.

20   *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th

21   Cir. 1988).  Thus, the allegations that Castro, Runnels, and Jennings became aware of C.

22   Peterson's alleged violation of plaintiff's constitutional rights through the grievance process,

23   fails to state a claim upon which relief may be granted.  The deficiencies in these claims cannot

24   be cured by amendment, and should therefore be dismissed with prejudice.

25        Defendants also argue that plaintiff's allegations again D. Peterson are insufficient

26   because they are "premised solely upon [plaintiff's] conclusory assumption that D. Peterson

27

asked her husband, C. Peterson, to wrongfully find Plaintiff guilty." ECF No. 353 at 19. While the complaint is hardly a model of clarity, plaintiff has alleged (and maintains in his opposition brief), that D. Peterson, a captain, directed C. Peterson, a subordinate officer (lieutenant), to find plaintiff guilty of an "unlawful charge" for an improper purpose. ECF No. 355 at 71. Liberally construed, the complaint alleges that Captain D. Peterson set in motion the due process violation allegedly committed by Lieutenant. C. Peterson. *See id.*; *see also* ECF No. 319, ¶ 93 (alleging C. Peterson denied plaintiff due process of law). As noted, defendants do not seek dismissal of the due process claim against C. Peterson. While it may be true that these allegations rest on a false premise and perhaps could not survive a motion brought under Rule 56 or might otherwise fail at trial, this motion is brought under Rule 12(b)(6) and the allegations of the complaint must be taken as true. Assuming the truth of the allegation that Captain D. Peterson ordered or set in motion the conduct of a subordinate who allegedly violated plaintiff's due process rights, plaintiff may hold D. Peterson liable as a supervisor who set in motion the act of another. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

## I.   Claims Alleged in Paragraph 9

Paragraph 9 includes plaintiff's allegations that on January 5, 1999, defendants Babich, Baughman, and Diggs wrongfully failed to reduce plaintiff's classification score and that on January 28, 1999, defendant Reyes retaliated against plaintiff by wrongfully raising his classification score by twelve points. Paragraph 9 also includes the allegations that in reviewing plaintiff's administrative grievance, defendants Runnels and Jennings "rubber-stamped" Reyes' decision to lower plaintiff's score. ECF No. 319 ¶¶ 101(b), 111-112.

Defendants argue that the allegations against Jennings and Runnels must be dismissed with prejudice for failure to state a claim. According to the complaint, Reyes' "clear violations were rubber-stamped by defendants Jennings and Runnels, [a]nd overturned only after [his] appeal went beyond HDSP. Those acts were unlawful, lack penological justifications, were intended to harass, and were arbitrary and capricious." ECF No. 319 ¶ 101(b). Once again,

28

plaintiff seeks to hold Runnels and Jennings liable for an alleged violation of plaintiff's rights, even though Runnels and Jennings did not personally participate in that violation. Like the allegations in paragraph 8, these allegations fail to state a claim because they are premised upon a theory of respondeat superior, and because the alleged failure to properly address a grievance cannot serve as a basis for liability. These deficiencies cannot be cured by amendment, and therefore the claims must be dismissed with prejudice.

### J.    Claims Alleged in Paragraph 10

Paragraph 10 includes the allegations that on February 1, 1999, inmate-Garcia gave Reyes some of plaintiff's legal documents, and Reyes wrongfully refused to return the property to Garcia. ECF No. 319 ¶ 46. The court has carefully reviewed each of plaintiff's grievances as to these allegations and again finds that none of them would have alerted prison officials to the claims raised in paragraph 10. *See* ECF No. 333, Exs. G-Z; *see also id.*, Ex. F (including a chart that briefly summarizes the issues raised in each of the twenty grievances).

In opposition, plaintiff states that he "timely submitted an appeal," but that it "was never returned." ECF No. 355 at 96 (¶ 29). Plaintiff does not claim to have taken any further steps to pursue this appeal after not receiving an initial response. Like the claims alleged in paragraph 7, the court cannot conclude, from this record, that plaintiff's administrative remedies for the claim alleged in paragraph 10, were rendered "effectively unavailable." *See Nunez*, 591 F.3d at 1224, 1226. Accordingly, this claim must also be dismissed without prejudice as unexhausted.

### K.    Claims Alleged in Paragraph 11

Paragraph 11 includes plaintiff's allegations that on February 25, 1999, Haas falsely identified plaintiff as a "shot caller." ECF No. 319 ¶ 47. Defendants do not seek dismissal of the claims alleged in paragraph 11.

### L.    Claims Alleged in Paragraph 12

Paragraph 12 includes plaintiff's allegations that on March 16, 1999, McClure, Diggs, Wright, and South-Gilliam retaliated against plaintiff by unlawfully placing him on C-status.

1  ECF No. 319 ¶¶ 43(f), 72(d), 75, 76(c), 77(c), 79, 97, 105, 107, 108.  Careful review of each

2  of plaintiff's grievances reveals that none of them would have alerted prison officials to the

3  claims raised in paragraph 12.  *See* ECF No. 333, Exs. G-Z; *see also id.*, Ex. F (including a

4  chart that briefly summarizes the issues raised in each of the twenty grievances).

5         In opposition, plaintiff contends that exhaustion in "waived" because prison officials did

6  not timely respond to the group appeal he filed with inmate Frank Garcia on March 18, 1999.

7  ECF No. 355 at 52-54, Ex. 7.  Plaintiff claims that the response to his appeal was due on April

8  19, 1999, but not provided until May 4, 1999.  *See id.*  Plaintiff fails to demonstrate

9  circumstances showing that through this short delay, prison officials "sufficiently thwarted the

10 process so as to render it unavailable."  *Ellis*, 2005 U.S. Dist. LEXIS 37346, at *14.  In addition,

11 plaintiff's assertion that the response was untimely is not supported by his evidence.  It is

12 apparent from the appeal that while dated by plaintiff on March 18, 1999, it was not received by

13 the appeals department until April 27, 1999.  ECF No. 355, Ex. 7.  Prison officials then had 30

14 working days – until June 9, 1999, to respond.  *See* Cal. Code Regs. tit. 15, § 3084.6(b)(3)

15 (1998).  It appears that the appeals coordinator responded early, on May 4, 1999, by partially

16 granting the appeal at the second level of review.  ECF No. 355, Ex. 7.  Thus, plaintiff's

17 contention that his obligation to exhaust administrative remedies was waived because of an

18 untimely response, lacks merit.  The claims alleged in paragraph 12 must therefore be dismissed

19 without prejudice as unexhausted.

20 **V.    Plaintiff's Request for Counsel**

21        Plaintiff requests the appointment of counsel.  ECF Nos. 359, 360.  District courts lack

22 authority to require counsel to represent indigent prisoners in section 1983 cases.  *Mallard v.*

23 *United States Dist. Court*, 490 U.S. 296, 298 (1989).  In exceptional circumstances, the court

24 may request an attorney to voluntarily to represent such a plaintiff.  *See* 28 U.S.C. § 1915(e)(1);

25 *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991); *Wood v. Housewright*, 900 F.2d 1332,

26 1335-36 (9th Cir. 1990).  When determining whether "exceptional circumstances" exist, the

1  court must consider the likelihood of success on the merits as well as the ability of the plaintiff to

2  articulate his claims pro se in light of the complexity of the legal issues involved.  *Palmer v.*

3  *Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).  Here, there are no such exceptional circumstances in

4  this case.  Accordingly, plaintiff's request for counsel is denied.

5  **VI.   Conclusion**

6         In light of the above, this action should proceed on plaintiff's claims that: (1) defendants

7  Castro and D. Peterson violated plaintiff's Eighth Amendment rights by maintaining a lockdown

8  from May 7, 1999 through December 8, 1999; (2) defendant Wright retaliated against plaintiff in

9  violation of the First Amendment when he deprived plaintiff of his legal property on August 12,

10  1997 and when he issued a false rules violation report on August 21, 1997; (3) defendants

11  Holmes, C. Peterson, and D. Peterson violated plaintiff's due process rights with respect to rules

12  violation report number 98-06-009; (4) defendants Babich, Baughman, and Diggs' calculation of

13  plaintiff's classification score violated the First and Fourteenth Amendments; (5) defendant

14  Reyes' calculation of plaintiff's classification score violated the First and Fourteenth

15  Amendments; and (6) that Haas retaliated against plaintiff in violation of the First Amendment

16  by falsely accusing plaintiff of being a shot caller on February 26, 1999.[21]

17         Accordingly, it is hereby ORDERED that plaintiff's request for appointment of counsel

18  (ECF Nos. 359, 360) is denied.

19  /////

20  /////

21  /////

22

---

23      [21] Defendants argue that the claims encompassed by paragraphs 1-12 are improperly joined
   under Federal Rules of Civil Procedure 18(a) and 20(a).  ECF No. 352 at 19-20.  They argue
24  plaintiff's claims should be severed and brought in separate lawsuits because "[i]t would be highly
   prejudicial for a jury to decide a Defendant's case after receiving hours of testimony on unrelated
25  allegations of misconduct by other correctional staff members."  *Id.* at 20.  Given that this case is
   still at the pleading stage and the recommendation herein will significantly narrow the scope of
26  plaintiff's claims, the defendants' request to sever plaintiff's claims is denied without prejudice.

Further, IT IS HEREBY RECOMMENDED that:

1. Defendants' August 30, 2012 motion to dismiss (ECF No. 352) be granted as follows:

(a) that the claims encompassed by paragraphs 1, 5, 6, 7, 10, and 12 be dismissed without prejudice as unexhausted;

(b) that the claims encompassed by paragraph 2 based on the alleged lockdown in place before May 7, 1999, be dismissed without prejudice as unexhausted;

(c) that the claims encompassed by paragraph 3, except for those alleging retaliation by Wright, be dismissed with prejudice for failure to state a claim;

(d) that the claims encompassed by paragraph 4, except for those alleging retaliation by Wright, be dismissed without prejudice as unexhausted;

(e) that the claims encompassed by paragraph 8, except for the due process claims against Holmes, C. Peterson, and D. Peterson, be dismissed with prejudice for failure to state a claim; and

(f) that the claims against Runnels and Jennings encompassed by paragraph 9 be dismissed with prejudice for failure to state a claim; and

2. That this action proceed solely on the claims identified above, against defendants Castro, D. Peterson, Wright, Holmes, C. Peterson, Babich, Baughman, Diggs, Reyes, and Haas, and that they be ordered to file an answer to the complaint within the time provided in Rule 12 of the Federal Rules of Civil Procedure.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

/////

/////

1  within the specified time may waive the right to appeal the District Court's order. *Turner v.*

2  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

3  DATED:  July 31, 2013.

4

5  EDMUND F. BRENNAN
   UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26